IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORP., Plaintiff, | ) | No. 06-387C |
| v. | ) | (Judge Block) |
| THE UNITED STATES, Defendant. | ) | |

JOINT PRELIMINARY STATUS REPORT

Pursuant to Paragraph 4 of Appendix A to the Rules of the United States Court of Federal Claims ("RCFC") and the Court's May 30, 2006 Special Procedures Order, the parties submit this Joint Preliminary Status Report.

a. Does the Court have jurisdiction over the action?

Plaintiff, Information Systems & Networks Corp. ("ISN"), asserts jurisdiction pursuant to 28 U.S.C. §§ 1491(a)(1) and (2), and 41 U.S.C. §§ 601-13.

Defendant, the United States, states that the Court does not possess jurisdiction to entertain (1) ISN's claim regarding Contract No. 5C-Y-EIR-0028, because the ISN did not commence this action within a year of the final administrative decision denying that claim; and (2) ISN's claims regarding Contract Nos. 85-C-00150, 273-91-C-0005, because ISN did not present those claims to the contracting officer; and (3) ISN's claims regarding Contract Nos. 503-BNBSC3513, N00024-85-C-6528, and DAAHOO-85-C-0010, because the United States and ISN are not both parties to any contracts identified by those numbers.

b. Should the case be consolidated with any other case and the reasons therefor?

This case should be consolidated with Information Systems & Networks Corp. v. United States, No. 06-99C (Fed. Cl.). This case was filed subsequent to No. 06-99C and should be consolidated under No. 06-99C. Both cases involve the same contracts and, indeed, the two final decisions were issued by the contracting officer in each case in response to ISN's December 14, 2004 claim letter.

c. Should the trial of liability and damages be bifurcated and the reasons therefor?

The trial of liability and damages should not be bifurcated.

d. Should further proceedings in this case be deferred pending consideration of another case before this Court or any other tribunal and the reasons therefor? Is there any basis for transferring or remanding the case to another tribunal, and are the parties aware of any related cases in this or any other tribunal.

Further proceedings in this case should not be deferred pending consideration of any other case before this Court or any other tribunal. There is no basis for transferring or remanding the case to another tribunal, and, except for Information Systems & Networks Corp. v. United States, No. 06-99C (Fed. Cl.), the parties are not aware of any related cases in this or any other tribunal.

e. Will a remand or suspension be sought and the reasons therefor and the proposed duration?

A remand or suspension will not be sought.

f. Will additional parties be joined?

Additional parties will not be joined.

g. Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56 and, if so, what is a proposed schedule for the intended filing?

Defendant anticipates filing motions pursuant to RCFC 12(b)(1) by December 15, 2006.

h. What are the relevant factual and legal issues?

The parties do not dispute that:

1. On December 14, 2004, ISN presented claims to the cognizant Administrative Contracting Officer ("ACO") pursuant to various contracts.

2. ISN's December 14, 2004 submission to the ACO presented seven claims, for: (1) damages for the Government's breach of contract for failure to pay invoiced amounts within the contracts' ceilings, (2) damages for breach of contract for costs incurred by ISN above the contracts' ceilings, (3) loss of profit from withheld follow-on contracts not awarded to ISN due to various breaches of contract by the Government, (4) unabsorbed overhead upon the loss by ISN of follow-on contracts, (5) damages connected with final resolution of all outstanding contractual issues to establish final rates, (6) Prompt Payment Act and Contract Disputes Act interest, and (7) fees pursuant to the Equal Access To Justice Act.

3. On February 9, 2005, the ACO issued a final contracting officer's decision upon claim (5).

4. On February 8, 2006, ISN commenced Case No.06-99C (Fed. Cl.), ISN appealed from the ACO's decision in Case No.

5. On May 12, 2005, the ACO issued a final contracting officer's decision denying claims (1), (2), (3), (4), (6) and (7) pursuant to those contracts upon which he possessed authority to do so, and demanding that ISN pay the Government $280,241, plus interest to the date of payment.

6. On May 11, 2006, ISN commenced Case No. 06-387C (Fed. Cl.), appealing from the ACO's decision upon claims (1), (2), (6) and (7).

7. On September 7, 2006, the Government asserted a counterclaim in Case No. 06-387C (Fed. Cl.), for $280,241, plus interest from May 12, 2005.

The factual and legal issues in this case are:

1. Whether ISN is entitled to additional payment for alleged costs incurred up to the contract ceiling for each of the contracts specifically identified by ISN in its complaint.

2. Whether ISN is entitled to additional payment for alleged costs incurred in excess of the contract ceiling for each of the contracts specifically identified by ISN in its complaint as having incurred costs in excess of the contract ceiling.

3. Whether ISN is entitled to additional payment for alleged costs incurred on Contract No. NAS5-27486 with Goddard Space Flight Center Headquarters where that contract was converted pursuant to a bilateral modification from a cost-type contract to a fixed-priced contract, and ISN was paid all amounts due pursuant to the contract.

4. Whether the Court possesses jurisdiction to entertain ISN's claim regarding Contract No. 5C-Y-EIR-0028 entered with the Department of Justice ("DOJ"), where DOJ issued a final decision upon ISN's claim on March 30, 2005.

5. Whether the Court possesses jurisdiction to entertain ISN's claims regarding Contract Nos. 85-C-00150 and 273-91-C-0005, where ISN did not submit a claim as to those contracts and crossed-out those contract numbers from the spreadsheet submitted by ISN in support of its claim to the contracting officer.

6. Whether the Court possesses jurisdiction to entertain ISN's claims regarding Contract Nos. 503-BNBSC3513, N00024-85-C-6528, and DAAHOO-85-C-0010, where the United States and ISN are not both parties to any contracts identified by those numbers.

7. Whether ISN is entitled to interest pursuant to the Prompt Payment Act.

8. Whether ISN is entitled to interest pursuant to the Contracts Dispute Act.

9. Whether ISN is entitled to fees and expenses pursuant to the Equal Access to Justice Act in the event it is the prevailing party in this case?

10. Whether ISN's request for fees and expenses pursuant to the Equal Access to Justice Act is premature.

11. Whether the Government made any over-payments to ISN pursuant to contracts listed on Exhibit A to the Complaint, and if so, what is the amount of such overpayments.

12. Whether, if the Government made over-payments to ISN, when did it first learn of such over-payments.

13. Whether the claims set forth in the counterclaim are brought within the applicable statute of limitations.

14. Whether the Government is entitled to the $280,241, plus interest, demanded in the contracting officer's May 12, 2005 final decision.

15. Whether the alleged failure of the Government to determine final fringe and overhead rates for 1987-1995 until February 9, 2005, constitutes a breach of any of the contracts listed on Exhibit A to the Complaint.

i. What is the likelihood of settlement? Is alternative dispute resolution contemplated?

There does not appear to be any likelihood of settlement and, for that reason, does not consider, at this time, that any method of ADR is a viable method of resolving this case.

j. Joint Proposed Scheduling Plan

i. Dates for joinder of additional parties: None.

ii. Discovery Plan

1. Defendant anticipates filing a motion to dismiss in part for lack of subject matter jurisdiction.

   a. The motion will be filed by December 15, 2006.

   b. Defendant intends to argue that the Court does not possess jurisdiction to entertain (1) ISN's claim regarding Contract No. 5C-Y-EIR-0028, because the ISN did not commence this action within a year of the final administrative decision denying that claim; (2) ISN's claims regarding Contract Nos. 85-C-00150 and 273-91-C-0005, because ISN did not present those claims to the contracting officer; and (3) ISN's claims regarding Contract Nos. 503-BNBSC3513, N00024-85-C-6528, and DAAHOO-85-C-0010, because the United States and ISN are not both parties to any contracts identified by those numbers.

2. Discovery should not be conducted in phases or be limited to certain issues.

3. Fact discovery will be completed by September 30, 2007.

4. The parties shall disclose their expert witnesses' identities by March 2, 2007, and their rebuttal expert witnesses' identities by April 6, 2007. Plaintiff will disclose its expert's report by October 31, 2007, and defendant will disclose its expert's report by November 30, 2007. Plaintiff will disclose its rebuttal expert's report by December 15, 2007, and defendant will disclose its rebuttal expert's report by December 31, 2007.

5. Expert discovery will be completed by January 30, 2008.

6. The presumptive limits of 10 depositions and 25 interrogatories per party should apply in this case.

7. No physical or mental examinations of parties will be requested.

8. There are no other matters pertinent to discovery in this case.

iii. The earliest date by which this case should reasonably be expected to be ready for trial is May 1, 2008.

iv. The parties estimate that five days total will be necessary to try this case to judgment.

v. The parties request Washington, D.C., as the place for trial.

k. Are there special issues regarding electronic case management needs?

There are no special issues regarding electronic case management needs.

l. Is there other information of which the Court should be aware at this time?

There is no other information of which the Court should be aware at this time. The parties represent that on October 24, 2006, counsel held the early meeting of counsel as required in Appendix A ¶ 3. The parties stipulate that December 8, 2006, for the initial disclosures set out in RCFC 26(a)(1).

Appendix A Paragraph 7: the parties propose November 14, 15, or 16, 2006, at 10:00 a.m. for the preliminary status conference.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Mark A. Melnick
by s/Brian M. Simkin
MARK A. MELNICK
Assistant Director

NORMAN H. SINGER
Singer & Associates, P.C.
10411 Motor City Drive
7th Floor
Bethesda, MD 20817
Telephone: (301) 469-0400
Facsimile:

Attorney for Plaintiff

Date: Oct. 27, 2006

s/Timothy P. McIlmail
TIMOTHY P. MCILMAIL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 616-0342
Facsimile: (202) 514-7965

OF COUNSEL:
GREGORY T. ALLEN
Trial Attorney
Defense Contract Management Agency
Manassas, VA

Attorneys for Defendant

Date: October 27, 2006

Certificate of Filing

I hereby certify that on October 27, 2006, a copy of the foregoing Joint Preliminary Status Report was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

APPENDIX TO JOINT PRELIMINARY STATUS REPORT

# INDEX

PAGE(S)

Contract Disputes Act Claim Under 19 Contracts, Dec. 14, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Contracting Officer's Final Decision, Contract No. 5C-Y-EIR-0028, Mar. 30, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Contracting Officer's Final Decision, Contract Nos. F19628-82-C-0108, et al., May 12, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

RECEIVED: 12/21/2004

SINGER & ASSOCIATES

*A Professional Corporation*

ATTORNEYS AT LAW
10411 MOTOR CITY DRIVE
SUITE 725
BETHESDA, MD 28017

TELEPHONE: (301) 469-0400
FASCIMILE: (301) 469-0403
EMAIL: NSINGER@ISNCORP.COM

VIRGINIA OFFICE
810A BULLS NECK ROAD
SUITE ONE
MCLEAN, VA 22102

December 14, 2004

**VIA FEDERAL EXPRESS**

Mr. John Svensson
Administrative Contracting Officer
Defense Contract Management Agency Maryland
217 East Redwood Street, Suite 1800
Baltimore, Maryland 21202-5299

Re: Contract Disputes Act Claim Under 19 Contracts

Dear Mr. Svensson:

As Counsel to Information Systems and Networks Corporation ("ISN"), and pursuant to Federal Acquisition Regulations ("FAR") § 52.233-1 and the Contracts Disputes Act of 1978, 41 U.S.C.§ 601 et. seq. as amended ("CDA"), ISN respectfully submits the following certified claim for various contract entitlements under the 19 contracts set forth on Exhibit A attached to this certified claim and incorporated herein by specific reference. (The 19 contracts will be hereinafter referred to as "the Contracts.") The claims, as hereinafter described, consist of (i) damages for the Government's breach of contract for failure to pay invoiced amounts within the Contracts' ceilings, (ii) damages for breach of contract for costs incurred by ISN above the Contracts' ceilings, (iii) loss of profit damages from withheld follow-on contracts not awarded ISN due to the various breaches of contract by the Government, (iv) for unabsorbed overhead damages on the loss by ISN of follow-on contracts, (v) damages connected with final resolution of all outstanding contractual issues to establish final rates, (vi) for Prompt Payment Act and appropriate CDA interest, and (vii) for reasonable attorneys fees incurred by ISN under the Equal Access to Justice Act.

## I. Historical Background

On June 27, 2002, ISN submitted to the Defense Contract Management Agency ("DCMA"), a certified CDA claim relevant to 23 different contracts. The letter was received by the DCMA Administrative Contracting Officer ("ACO") or "Contracting Officer" on or about July 1, 2002. ISN's certified CDA claim set forth six claims: (1) a claim for "adjusted indirect cost rates" concerning five categories of indirect cost; (2) a claim for unpaid fees on 17 of the contracts; (3) a claim for "retentions on invoices" on 9

of the contracts; (4) a claim for " all contract cost below ceilings less previous payments"; (5) a request "to increase the contract cost limitation" on 22 contracts; (6) a claim for " wrongful withholdings." The total amount demanded for all claims was in excess of $5.8 million.

During the period June-September, 2002, the ACO and ISN engaged in discussions regarding the claims set forth in the certified CDA claim including, inter alia, issues regarding the indirect cost rate portion of ISN's claim. On October 25, 2002, ISN's, Chief Financial Officer submitted a letter withdrawing ISN's certified CDA claim. This letter was received by the ACO. Subsequently, ISN provided additional information to the ACO in an effort to resolve certain issues set forth in the withdrawn certified CDA claim, On December 8, 2002, the ACO stated that the June 27, 2002 CDA claim "had been officially withdrawn" and he would not consider any further documentation regarding ISN's claims, because the claims were no longer certified in accordance with Section 33.207 of the FAR.

On March 25, 2004, ISN filed a complaint against the Government in the United States Court of Federal Claims. Information Systems Networks, Corporation v. United States, No. 04-481C (Judge Miller). A copy of the Complaint is attached as Exhibit E and incorporated herein by reference. ISN predicated the Complaint on the June 27, 2002 certified CDA claim because the Contracting Officer had not issued a final decision or notified ISN when a final decision would be expected to be issued; therefore, ISN claimed that jurisdiction was appropriate in the United States Court of Federal Claims. At the time of the filing of the Complaint, ISN was not aware of the withdrawal of the certified CDA claim by its Chief Financial Officer, as heretofore set forth. Thereafter, the Government filed a motion to dismiss claiming, inter alia, that the Court lacked jurisdiction to entertain the Complaint because ISN had failed to submit a CDA claim or obtain a final decision prior to the filing of its Complaint with the Court. After appropriate investigation, ISN determined that the Government's position was substantially correct regarding jurisdiction, and dismissed the case without prejudice so as to enable it to file the appropriate certified CDA claim.

## II. The Claims

This is a consolidated CDA claim that combines various claims arising out of 19 separate contracts between ISN and the Government. By way of background, ISN, like other contractors, was required within 90 days after expiration of its fiscal year to submit to the cognizant Contracting Officer as well as to the audit agency an incurred cost submission for final overhead rates based upon actual incurred costs. A final overhead rate is generally computed as a percentage or dollar factor that expresses the ratios of

indirect expenses incurred in the period to direct labor, total cost input, or some other appropriate base of the same. Final overhead rates are necessary to determine the cost incurred under cost reimbursement type contracts as well as incentive and fixed -price redeterminable type contracts. Final overhead rates also apply to any other contracts that require settlement of indirect cost prior to establishing a final contract price.

ISN submitted such proposals in a timely manner but the Government refused to settle certain issues concerning ISN's costs then obstructed agreements on final overhead rates. In fact, with the exception of fiscal year 1996 and 1997, ISN's indirect cost rates have not been settled for 17 years (for FY 1985-1995, 1998-2003.)

This CDA claim asserts amounts owed by the Government to ISN under 19 reimbursement contracts. A list of the 19 contracts has been attached to this CDA claim as Exhibit A and incorporated by reference as if fully and specifically set forth herein. The amounts were compiled with data from the Defense Contract Audit Agency ("DCAA") Audit Reports, DCAA Forms 1's, Indirect Rate Cost Submissions and the records of ISN. ISN's indirect cost rates that were used to calculate the costs claimed by ISN herein comply with the requirements of the FAR. The claims asserted herein are unrelated to any claim previously or currently filed by ISN with DCMA or any other judicial or administrative proceeding.

Attached as Exhibit B and C are Schedules that set forth the amounts owed ISN on each of the Contracts. The claims hereinafter asserted are for the payment of each amount owed under each of the Contracts. The Government has failed to resolve outstanding contractual issues with ISN and pay these amounts. Such failures constitute a breach of contract under each of the Contracts. Each of the amounts claimed should have been paid within a reasonable time, but were not, thereby entitling ISN to Prompt Payment Act interest. At all times ISN has attempted, in good faith, to resolve the five indirect cost rate issues (i.e. cost of ownership, cost of bonuses, cost of pension, cost of ownership equipment rentals, and corporate and B&P allocations). The Government failed to agree upon final indirect rates, which would have allowed ISN to timely invoice contract fees, retainages, and final costs incurred. The Government failed to issue required Form 1's regarding the five issues in dispute in the settlement of final indirect rates in a timely manner. The result of this conduct caused the rates to remain open thereby preventing ISN from billing and closing out the contracts, which are the subject of this claim. As a result, any applicable statute of limitations was tolled by conduct of the Government. Attached, as Exhibit D is a schedule of the issuance of the Form 1's.

Regarding ISN's claim for breach of contract for failure of the Government to pay invoiced amounts within contract ceilings, the total owed on 17 of the 19 contracts for

unpaid fees is at least $490,000 dollars. Total amounts due ISN for costs incurred within contract ceilings including retainages totals at least $2.2 million dollars. (See Schedules B&C)

Regarding ISN's claim for breach of contract for costs incurred above contract ceilings, ISN has incurred costs above contract ceilings in the sum of at least $2.5 million dollars. (See Schedules B&C)

Regarding ISN's claim for loss of profit from withheld follow-on contracts, ISN asserts that at least five of the 19 contracts contained option or follow-ons, which the Government did not exercise in favor of ISN because ISN did not have final indirect rates. The follow–on contract for Contract No. F19628-82-C0108 was not awarded to ISN. As a result, ISN lost profit of at least $1million dollars on the follow-on portion of this contract. ISN was not awarded the follow-on to Contract No. MDA903-84-C-022. As a result, ISN lost at least $1 million dollars in profit on the follow-on portion of this contract. ISN was not awarded the follow-on to Contract No. F19628-85-C-0035. As a result, ISN lost at least $250,000 dollars in profit on the follow-on portion of this contract. ISN was not awarded the follow-on to Contract No. 5C-Y-EIR-0028. As a result, ISN lost at least $1million dollars in profit on the follow on portion of this contract. ISN was not awarded the follow-on to Contract No. DTFA01-85-Y-01018. As a result, ISN lost profit of at least $1million dollars on follow-on portion of this contract.

Regarding ISN's claim for unabsorbed overhead on the loss of the follow-on contracts, ISN claims that the follow-on contracts would have absorbed a certain amount of ISN's overhead in the performance of the contracts. As a result of the loss of the follow-on contracts and the revenue therein estimated to exceed $20million dollars, such revenue would have absorbed a certain portion of ISN's G&A overhead. As a result of the loss of revenue, the unabsorbed overhead was required to be absorbed by other ISN contracts, thereby reducing the profit margin of such contracts to ISN's detriment. ISN claims a loss in excess of $1million dollars on its unabsorbed overhead due to the loss of the follow-on contracts.

Regarding ISN's claim for final determination of all outstanding contractual issues to establish final rates, ISN claims that it has provided documentation to the ACO resolving the issues of cost of ownership, cost of bonuses, cost of pension, cost of ownership-equipment rental, and corporate and B&P cost allocation. Therefore, ISN is entitled to the issuance of final rate approvals for FY 1985-1996.

Regarding ISN's claim to Prompt Payment Act and CDA interest, ISN has invoiced the Government for amounts within contract ceilings which the Government has

failed to pay as well as for amounts incurred above contract ceiling due to the conduct of the Government. Such invoices were properly submitted to the cognizant agency and contained, or were accompanied by, substantiating documentation. The Government failed to pay, and or withheld payment on the ISN invoices. All of the Invoices submitted by ISN to the Government applied to contracts for the procurement of property or services entered into for the benefit of the Government. Accordingly, the failure of the Government to pay the invoices in accordance with the law, obligates the Government to pay ISN interest penalties pursuant to 31 U.S.C.§ 3907 for a period of one year after the invoice was due to be paid by the Government, and an additional penalty thereafter until the filing of ISN'S CDA claim. ISN is also entitled to CDA interest on the amounts set forth in this CDA claim beginning as of the date this claim is filed with the ACO.

Regarding ISN's claim to its reasonable attorney's fees and expenses incurred in this proceeding, ISN claims that either the Government's position will be found not to be "substantially justified," or alternatively, will establish a substantial benefit for other contractors who have not had final rates decided by the Government in a reasonable and timely fashion. Accordingly, ISN is entitled to the recovery of its reasonable attorneys fees and expenses, which will be subsequently incurred if this CDA claim is not paid.

III. ISN's Specific Claim Amounts

1. For unpaid contract fee and amounts due within contract ceilings including retainages in an amount not less than $2.6 million dollars;
2. For ISN's cost over contract ceilings in an amount no less than $2.5 million dollars
3. For ISN's loss of profit in amount no less than $5 million dollars;
4. For loss of unabsorbed overhead in an amount no less than $1 million dollars;
5. For the resolution of the five indirect rate issues to conclusively establish final rates for ISN for the period FY 1985-1996;
6. For appropriate Prompt Payment Act and CDA interest.
7. For reasonable attorney's fee's.

IV. Conclusion

ISN is requesting, that as the cognizant Contract Officer, you issue a decision in writing or otherwise furnish a copy of the decision to ISN, care of the undersigned. The decision shall state the reasons for the decision reached by you, and shall inform ISN of its rights as provided under the CDA and any applicable regulation under the FAR. Specific findings of fact are not required, but if made, shall not be binding in any subsequent proceeding.

SINGER & ASSOCIATES
*A Professional Corporation*



V. Claim Certification

See attached.

Very Sincerely Yours,

Norman H. Singer, Esq.

Attachment
NHS/nnb

Claim Certification

I, Roma Malkani, President & CEO of Information Systems& Networks Corporation ("ISN") hereby provides the following Certification as required by 41 U.S.C.§ 605 (c)(1)(1994):

1. I am authorized the representative of ISN; I am familiar with ISN's books and records of account and with each of the 19 contracts that are the subjects of this CDA claim and listed in Exhibit A to the claim.

2. I hereby certify that ISN's claims as set forth in its Counsel's letter to which this Claim Certification is attached, and as detailed on Exhibit B&C and explained in Exhibit D are made in good faith, that ISN's supporting data are accurate and complete to the best of my knowledge and belief to support the various claims; that the amounts requested accurately reflect ISN's entitlement to the amounts set forth; that the Government is liable to ISN for the amounts as set forth.

3. I hereby certify that none of the amounts claimed in the attached CDA claim consist of claims previously asserted by ISN except in Case No. 04-481C; none of these claims were covered or could have been covered by any payment made by the Government to ISN.

4. These claims are being asserted within six years after such claims first came to the attention of ISN when such claims therefore first accrued. Thus, the claims comply with 28 U.S.C.§ 2501.

5. The facts set forth in ISN's Counsel's letter to which this Certification is attached are based on the investigation of ISN and the results of the investigation.

6. I am duly authorized to certify the claims on behalf of ISN.

Under the Penalty of Perjury
Dated: December 14, 2004

Roma Malkani
Roma Malkani
President & CEO

EXHIBIT

A

LIST OF CONTRACTS

F19628-82-C-0108

NAS5-27486

MDA903-93-D-1504

MDA903-84-C-0222

DAAK20-84-C0149

N68335-84-D-0903

DASG60-85-C-0035

~~1026-47-0330~~

~~1026-485009~~

F19628-85-C-0035

503BNBSC3513

5C-Y-EIR-0028

DTFA01-85-Y-01018

~~85-C-00150~~

N00024-85-C-0010

DAAH00-85-C-0010

NASW-4164

MDA903-87-C-0004

SEC-87-0008

N66604-87-D-0098

MDA903-88-C0702

~~273-91-C-0005~~

DAAK70-83-C-0145 ("the Contracts")

EXHIBIT B

Schedule of Open ISN Contracts,
Fiscal Years 1985 to 1996

| ISN PROJ NO | FEDERAL GOVERNMENT CONTRACT NUMBER | CONTRACT COST LIMITATION (1) | ISN COST INCURRED BASED ON ACTUAL RATES | COST BILLED BASED ON INTERIM INDIRECT RATES (1) | AMOUNTS WITHHELD FOR DCAA FORM 1's (1) | GOVERNMENT RETENTION ON INVOICES (1) | ISN COST PAID BY FEDERAL GOVERNMENT* | COST TO CONTRACT CEILING OWED TO ISN WITHOUT FEE |
|---|---|---|---|---|---|---|---|---|
| | CPFF | | | | | | | |
| | COLUMN REFERENCE: | A | B | C | D | E | F | G |
| | COLUMN FORMULA: | | | | | | C-D-E | A-F (B-F WHEN COST IS LESS THAN CEILING) |
| 1017 | F19628-82-C-0108 | $ 1,280,078.02 | $ 1,283,871.75 | $1,277,449.11 | $113.00 | $ 600.52 | $1,276,735.59 | $3,342.43 |
| 1028 | NAS5-27466 | $ 2,354,825.08 | $ 2,157,134.28 | $2,146,838.59 | $26,126.00 | $ 10,056.00 | $2,110,656.59 | $46,477.69 |
| 1047 | MDA903-83-D-1504 | $ 2,753,220.87 | $ 2,751,208.41 | $2,630,704.47 | $17,572.00 | $ 6,518.00 | $2,606,614.47 | $120,503.94 |
| 1058 | MDA903-84-C-0222 | $2,454,733.16 | $ 2,310,343.84 | $2,360,320.35 | $51,222.00 | $ 44,168.00 | $2,264,930.35 | $45,413.49 |
| 1061 | DAAK20-84-C-0149 | $ 74,594.82 | $ 139,475.31 | $67,813.47 | | | $67,813.47 | $6,781.35 |
| 1062 | N68335-84-D-0903 | $ 76,880.00 | $ 162,894.39 | $52,264.21 | $1,068.00 | $ 8,394.00 | $42,802.21 | $34,077.79 |
| 1064 | DASG60-85-C-0035 | $ 54,372.36 | $ 82,919.73 | $53,834.02 | | | $53,834.02 | $538.34 |
| ~~1072~~ | ~~1026-47-0330~~ | ~~$ 3,468,324.21~~ | ~~$ 3,483,678.83~~ | ~~$3,433,084.37~~ | | | ~~$3,433,084.37~~ | ~~$49,504.46~~ |
| ~~1074~~ | ~~1026-485000~~ | ~~$ 146,751.46~~ | ~~$ 282,478.53~~ | ~~$144,308.07~~ | | | ~~$144,308.07~~ | ~~$1,443.08~~ |
| 1077 | F19628-85-C-0043 | $ 457,682.43 | $ 587,597.28 | $453,150.92 | $3,504.00 | $ 1,974.00 | $447,672.92 | $10,009.51 |
| 1079 | 503BNBSC3513 | $ 1,856,911.00 | $ 2,197,308.30 | $1,740,379.66 | | | $1,740,379.66 | $116,531.34 |
| 1083 | 5C-Y-EIR-0028 | $ 6,602,341.43 | $ 6,690,668.27 | $6,472,883.75 | $15,360.00 | $ 61,658.00 | $6,395,865.75 | $206,475.68 |
| 1088 | DTFA01-85-Y-01018 | $ 825,238.00 | $ 884,386.17 | $819,237.86 | $9,086.00 | | $810,151.86 | $15,086.14 |
| ~~1091~~ | ~~85-G-00150~~ | ~~$ 140,646.99~~ | ~~$ 154,406.20~~ | ~~$127,833.63~~ | | | ~~$127,833.63~~ | ~~$12,783.36~~ |
| 1093 | N00024-85-C-6528 | $ 2,512,790.92 | $ 2,639,456.70 | $2,475,656.08 | $21,943.00 | $ - | $2,453,713.08 | $59,077.84 |
| 1102 | DAAH00-85-C-0010 | $ 2,754,716.50 | $ 2,905,074.53 | $2,754,356.47 | $23,949.00 | $ 7,694.00 | $2,722,713.47 | $32,003.03 |
| 1125 | NASW-4164 | $ 4,686,804.00 | $ 2,902,479.06 | $2,681,657.40 | | | $2,681,657.40 | $220,821.66 |
| 1159 | MDA903-87-C-0004 | $ 1,493,504.26 | $ 1,578,187.02 | $1,457,077.33 | $10,762.00 | | $1,446,315.33 | $47,188.93 |
| 1175 | SEC-87-0008 | $ 203,000.00 | $ 204,564.62 | $188,644.00 | | | $188,644.00 | $14,356.00 |
| 1179 | N66604-87-D-0098 | $ 5,456,798.00 | $ 5,661,546.44 | $5,406,196.88 | $82,843.00 | | $5,323,353.88 | $133,444.12 |
| 1184 | MDA903-88-C-0702 | $ 2,457,059.00 | $ 2,662,131.86 | $2,334,235.94 | $22,484.00 | | $2,311,751.94 | $145,307.06 |
| ~~1291~~ | ~~273-91-C-0005~~ | ~~$ 8,494,555.99~~ | ~~$ 8,284,383.88~~ | ~~$8,269,472.54~~ | ~~$50,704.00~~ | | ~~$8,218,378.54~~ | ~~$216,177.46~~ |
| 2009 | DAAK70-83-C-0145 | $ 2,797,794.06 | $ 3,560,628.79 | $2,664,565.77 | $23,374.00 | $ 14,314.00 | $2,626,877.77 | $170,916.29 |
| | TOTAL CPFF | $ 53,342,592.26 | $ 53,566,724.09 | $ 50,012,564.89 | $ 360,200.00 | $ 155,376.52 | $ 49,496,988.37 | $ 1,708,350.98 |

App. 9

EXHIBIT C

## Schedule of Open ISN Contracts
Fiscal Years 1985 to 1996

| ISN PROJ NO | FEDERAL GOVERNMENT CONTRACT NUMBER | COST OVER CONRACT CEILING DUE TO INTERIM INDIRECT COST RATES | TOTAL ISN COST OVER AMOUNT PAID | | TOTAL FEE ON CONTRACT | UNPAID INVOICED FEE | AMOUNT DUE TO ISN WITHIN CONTRACT INCLUDING RETAINED FEE | FISCAL YEARS OF PERFORMANCE | ESTIMATED INTEREST PER FAR PART 32 (3) | TOTAL AMOUNT DUE TO ISN WITH ADJUSTED COST AND INTEREST |
|---|---|---|---|---|---|---|---|---|---|---|
| | CPFF | | | | | | | | | |
| | COLUMN REFERENCE: | H | I | | J | K | L | | M | N |
| | COLUMN FORMULA: | B-A ($0 WHEN COST IS LESS THAN CEILING) | G+H | | | | G+K | | | I+K+M |
| 1017 | F19628-82-C-0108 | $3,793.73 | 7,136.16 | | $ 122,698.98 | $ 17,560.52 | $ 20,902.85 | 1985-1986 | $ 8,779.24 | $ 33,475.92 |
| 1028 | NAS5-27486 | $0.00 | 46,477.69 | | $ 185,056.41 | $ 27,758.41 | $ 74,236.10 | 1984-1988 | $ 31,179.16 | $ 105,415.26 |
| 1047 | MDA903-83-D-1504 | $0.00 | 120,503.94 | | $ 265,259.53 | | $ 120,503.94 | 1984-1990 | $ 50,611.65 | $ 171,115.59 |
| 1058 | MDA903-84-C-0222 | $0.00 | 45,413.49 | | $ 245,623.60 | $ 10,330.70 | $ 55,744.19 | 1984-1985 | $ 23,412.56 | $ 79,156.75 |
| 1061 | DAAK20-84-C-0149 | $64,880.49 | 71,661.84 | | $ 8,237.00 | $ 1,235.56 | $ 8,016.91 | 1984-1986 | $ 3,367.10 | $ 76,264.50 |
| 1062 | N68335-84-D-0903 | $86,014.39 | 120,092.18 | | $ 14,069.80 | $ 520.72 | $ 34,598.51 | 1984-1986 | $ 14,531.37 | $ 135,144.28 |
| 1064 | DASG60-85-C-0035 | $28,547.37 | 29,085.71 | | $ 12,248.00 | $ 6,864.00 | $ 7,402.34 | 1985-1986 | $ 3,108.98 | $ 39,058.69 |
| ~~1072~~ | ~~1026-47-0330~~ | ~~$15,264.62~~ | ~~64,840.98~~ | | ~~$ 343,398.44~~ | ~~$ 51,500.77~~ | ~~$ 101,104.23~~ | ~~1984-1987~~ | ~~$ 42,463.78~~ | ~~$ 168,922.63~~ |
| ~~1074~~ | ~~1026-485009~~ | ~~$136,727.38~~ | ~~138,170.46~~ | | ~~$ 12,268.86~~ | | ~~$ 1,443.08~~ | ~~1985-1986~~ | ~~$ 806.09~~ | ~~$ 138,776.56~~ |
| 1077 | F19628-85-C-0043 | $129,914.85 | 139,924.36 | | $ 32,729.25 | | $ 10,009.51 | 1985-1987 | $ 4,203.99 | $ 144,128.35 |
| 1079 | 503BNBSC3513 | $340,397.30 | 456,928.64 | | $ 159,477.00 | $ 16,685.00 | $ 133,216.34 | 1985-1988 | $ 55,950.86 | $ 528,564.50 |
| 1083 | 5C-Y-EIR-0028 | $88,326.85 | 294,802.52 | | $ 474,551.32 | $ 110,172.00 | $ 316,647.68 | 1985-1990 | $ 132,992.02 | $ 537,966.54 |
| 1086 | DTFA01-85-Y-01018 | $59,148.17 | 74,234.31 | | $ 74,271.31 | | $ 15,086.14 | 1985-1988 | $ 6,336.18 | $ 80,570.49 |
| ~~1091~~ | ~~85-C-00150~~ | ~~$43,780.20~~ | ~~26,672.57~~ | | ~~$ 15,390.87~~ | | ~~$ 12,783.36~~ | ~~1985-1989~~ | ~~$ 5,360.04~~ | ~~$ 34,941.88~~ |
| 1093 | N00024-85-C-6528 | $126,665.78 | 185,743.62 | | $ 212,922.50 | $ 23,092.45 | $ 82,170.29 | 1985-1990 | $ 34,511.52 | $ 243,347.50 |
| 1102 | DAAH00-85-C-0010 | $150,358.03 | 182,361.06 | | $ 213,421.86 | $ 15,080.38 | $ 47,083.39 | 1985-1990 | $ 19,775.02 | $ 217,216.44 |
| 125 | NASW-4164 | $0.00 | 220,821.66 | | $ 215,756.00 | $ 32,364.00 | $ 253,185.66 | 1986-1991 | $ 106,337.98 | $ 359,523.64 |
| 159 | MDA903-87-C-0004 | $84,682.75 | 131,871.69 | | $ 154,080.74 | $ 31,541.19 | $ 78,730.12 | 1987-1990 | $ 33,066.65 | $ 196,479.53 |
| 1175 | SEC-87-0008 | $1,564.62 | 15,920.62 | | $ 15,198.00 | | $ 14,356.00 | 1987-1990 | $ 6,029.52 | $ 21,950.14 |
| 1179 | N66604-87-D-0098 | $204,748.44 | 338,192.56 | | $ 348,284.66 | $ 51,944.87 | $ 185,388.99 | 1988-1993 | $ 55,816.70 | $ 445,754.12 |
| 1184 | MDA903-88-C-0702 | $205,072.86 | 350,379.92 | | $ 197,516.39 | $ 54,909.90 | $ 200,216.96 | 1988-1993 | $ 60,065.09 | $ 465,354.90 |
| ~~1201~~ | ~~273-91-C-0005~~ | ~~$0.00~~ | ~~218,177.45~~ | | ~~$ 603,723.69~~ | ~~$ 8,981.55~~ | ~~$ 225,159.00~~ | ~~1991-1996~~ | ~~$ 54,938.16~~ | ~~$ 270,407.16~~ |
| 2009 | DAAK70-83-C-0145 | $762,834.74 | 933,751.02 | | $ 225,399.00 | $ 33,809.85 | $ 204,726.14 | 1984-1989 | $ 85,984.98 | $ 1,053,545.85 |
| | TOTAL CPFF | $ 2,502,721.56 | $ 4,211,072.53 | $ - | $ 4,150,589.21 | $ 494,360.85 | $ 2,202,711.83 | | $ 838,337.63 | $ 5,543,771.02 |

App. 10

EXHIBIT
D

## Schedule of Form 1 Dates

Prepared: March 22, 2004

| Period of Disapproved Cost | Date of Issue |
|---|---|
| | |
| **Disapproved Costs for FY 1996-2000** | **Date of Issue** |
| No Form 1 issued to date | -- |
| | |
| **Disapproved Costs for FY 1995** | **Date of Issue** |
| Lease Costs | 9/12/2000 |
| | |
| **Disapproved Costs for FY 1994** | **Date of Issue** |
| Pension Expense | 9/12/2000 |
| Multiple Small Items | 9/12/2000 |
| Lease Costs | 9/12/2000 |
| | |
| **Disapproved Costs for FY 1993** | **Date of Issue** |
| Multiple Small Items | 9/12/2000 |
| Pension Expense | 9/12/2000 |
| Lease Costs | 9/12/2000 |
| | |
| **Disapproved Costs for FY 1992** | **Date of Issue** |
| Multiple Small Items | 9/12/2000 |
| Pension Expense | 9/12/2000 |
| Lease Costs | 9/12/2000 |
| | |
| **Disapproved Costs for FY 1991** | **Date of Issue** |
| Lease Costs | 4/24/2000 |
| | |
| **Disapproved Costs for FY 1990** | **Date of Issue** |
| Lease Costs | 4/24/2000 |
| | |
| **Disapproved Costs for FY 1989** | **Date of Issue** |
| Lease Costs | 4/24/2000 |
| | |
| **Disapproved Costs for FY 1988** | **Date of Issue** |
| Lease Costs | 4/24/2000 |
| Multiple Small Items | 4/24/2000 |
| | |
| **Disapproved Costs for FY 1987** | **Date of Issue** |
| No Form 1 issued to Date | -- |
| | |
| **Disapproved Costs for FY 1986** | **Date of Issue** |
| No Form 1 issued to Date | -- |
| | |
| **Disapproved Costs for FY 1985** | **Date of Issue** |
| No Form 1 issued to Date | -- |
| | |

**U.S. Department oı Justice**

Justice Management Division

*Procurement Services Staff*

*Washington, D.C. 20530*

MAR 30 2005

**By Certified Mail**

Norman H. Singer, Esq.
Singer & Associates
10411 Motor City Drive
Bethesda, MD 28017

Re: Information Systems and Networks Corporation Contract Claim (5C-Y-EIR-0028)

Dear Mr. Singer:

This letter constitutes the Contracting Officer's final decision on Information Systems and Networks Corporation's (ISN's) December 14, 2004 Contract Disputes Act (CDA) claims under a 1985 Department of Justice (Department) Contract, 5C-Y-EIR-0028. As I discuss below, I deny each of ISN's claims before me.

**Background**

In a December 14, 2004 letter to John Svensson, Administrative Contracting Officer, Defense Contract Management Agency, ISN asserted CDA claims under 19 Government contracts, including the Department's contract. By prior Department delegation, Mr. Svensson is responsible for resolving ISN claims under that contract regarding indirect cost rates. By a letter dated January 4, 2005, Mr. Svensson forwarded ISN's letter to the Department for disposition of claims under the contract that do not relate to indirect cost rates.

ISN's December 14, 2004 stated claims against all contracting Government agencies:

1. For unpaid contract fee and amounts due within contract ceilings including retainages in an amount not less than $2.6 million;

2. For ISN's cost over contract ceilings in an amount no less than $2.5 million dollars[;]

3. For ISN's loss of profit in [an] amount no less than $5 million dollars;

4. For loss of unabsorbed overhead in an amount no less than $1 million dollars;

5. For the resolution of the five indirect rate issues to conclusively establish final rates for ISN for the period FY 1985-1996;

6. For appropriate Prompt Payment Act and CDA interest[; and]

7. For reasonable attorney's fee's [sic].

Dec. 14 letter at 5.

In a January 20, 2005 letter to the Department, ISN forwarded a copy of the December 14 claim letter and clarified that the non-indirect cost claims ISN asserts against the Department are the claims above numbered 2, 3, and 4.[1]

In a February 16, 2005 letter, I responded to ISN that Claim No. 2 was "lacking in detail," contained "virtually no discussion" about ISN's claims specifically asserted against the Department, and was "not supported with backup documentation to assist the Department in reviewing the merits of the claim." Regarding ISN's allegations in Claim Nos. 3 & 4, I noted that ISN *was* awarded a successor contract to the contract at issue. I requested that ISN provide to me by March 3, 2005: (1) a more definite statement of Claim No. 2; and (2) notice as to whether ISN wished to withdraw Claim Nos. 3 & 4. ISN did not respond to my request.

---

[1]ISN's December 14 letter also described these three claims as being for:

A. "[D]amages for breach of contract for costs incurred by ISN above the Contracts' ceilings" [Claim No. 2];

B. "[L]oss of profit damages from withheld follow-on contracts not awarded ISN due to the various breaches of contract by the Government" [Claim No. 3]; and

C. "[U]nabsorbed overhead damages on the loss by ISN of follow-on contracts" [Claim No. 4].

*Id.* at 1.

**The Contract**

The Department awarded Contract 5C-Y-EIR-0028 to ISN in early 1985 for "Automated Nationwide System for the Executive Office of Immigration Review [ANSIR] on a Turnkey Basis" including "development, acquisition, installation, evaluation, training, and maintenance of all software and hardware to meet all word processing/data processing and communications needs of the Executive Office of Immigration Review [EOIR] . . . ." Exhibit 1. The term of the contract was from early 1985 to September 30, 1985, with options to extend up to four additional years, which the Department exercised. The contract contained both firm fixed price and cost-plus-fixed fee components.[2] After a competition, the Department awarded a successor contract, OC-G-EIR-0051, to ISN to provide automated data support services for ANSIR. Exhibit 2. The term of the successor contract was from early 1990 to September 30, 1990, with options to extend up to four additional years, which the Department exercised.

ISN presents its current direct cost claims under Contract 5C-Y-EIR-0028 to the Department now, apparently for the first time.

**Claim No. 2**
**(Breach of Contract Damages for Costs**
**ISN Allegedly Incurred Above Contract Ceiling)**

Claim No. 2 seeks breach of contract damages for costs ISN allegedly incurred above the cost ceiling of the contract. As I noted in my February 16, 2005 letter, a reference to the Department's contract appears as a line item in two spreadsheet pages, Exhibits B & C to ISN's claim. These spreadsheets were also a part of ISN's now-dismissed Court of Federal Claims complaint asserting identical claims. This complaint, without the spreadsheets, is appended to the claim as Exhibit C. There is no narrative to describe how ISN asserts this specific claim against the Department, and ISN failed to respond to a request for a more definite statement of its claim.

Based on a review of the headings of the columns of two spreadsheet pages, I discern that ISN alleges that the Department owes it $537,966.54, inclusive of estimated interest, apparently for the combined

---

[2]ISN submitted its indirect costs under a number of government contracts, including Contract Nos. 5C-Y-EIR-0028, for Fiscal Years 1985 to 1990 to a Defense Contract Management Office (DCMA) administrative contracting officer. Years of negotiations, litigation, and audits ensued over ISN's indirect costs for those years. The Department delegated its authority to DCMA to resolve the indirect cost issues, and those are not before me.

base year and four option years of the contract.[3] The amount is calculated based on alleged costs over the contract ceiling; alleged downward adjustments due to the use of interim indirect cost rates; and alleged unpaid, invoiced contract fees. ISN has not demonstrated that its claim has merit. In addition, based on my own review of the contract file, I find that any putative claim for costs above the ceiling is foreclosed by the contract's terms.

The contract contained both firm fixed price and cost-plus-fixed fee (CPFF) components. In the base and option years, the contract explicitly stated estimated costs, cost ceilings, and the fixed fee for each year. The contract could not be clearer that the Department is not liable for unapproved costs over the ceilings in the CPFF portion. The contract contains the following limitation of cost provisions, appended as Exhibits 3-5.

- Paragraph B-11.2(B) provides:

  If available, additional funds may be allocated to this Contract by the Contracting Officer for subsequent tasks, in which event, upon written notice to the Contractor, the Obligated Funds shall be deemed increased by the additional sum or sums so allocated and the Contract shall be modified accordingly. In such event, cumulative obligations hereunder shall in no event exceed $989,904 for the Cost-Plus-Fixed-Fee portion of the contract [for the base year].

- Paragraph B-11.2(E) provides:

  The Government's obligation for payment to the Contractor hereunder shall in no event exceed the obligated funds as allocated to this Contract in accordance with paragraph A of this Article and the clause entitled "Limitation of Funds" which appears in the General Provisions.

- Paragraph D-4 provides:

  The total estimated cost and fixed fee for the base year (February 1, 1985, or date of award through September 30, 1985) and subsequent option years is set forth below . . . . Costs reimbursed hereunder, shall, in no event, exceed that amount without the prior written approval of the Contracting Officer.

---

[3]ISN's January 20, 2005 letter abandoned claims for interest with respect to the claims before me.

- Federal Procurement Regulation (FPR) § 1-7.202-3(b) (Limitation of Cost or Funds), 41 C.F.R. § 1-7.202-3(b) (1984) (superseded), incorporated by reference as Clause 8 of Section I's General Provisions for Cost Reimbursement Contracts, provides:

  Except as required by other provisions of this contract . . . the Government shall not be obligated to reimburse the Contractor for costs incurred in excess of the estimated cost set forth in the Schedule . . . unless and until the Contracting Officer shall have notified the Contractor in writing that such estimated cost has been increased . . . . In the absence of the specified notice, the Government shall not be obligated to reimburse the Contractor for any costs in excess of the estimated cost set forth in the Schedule, whether those excess costs were incurring during the course of the contract or as a result of termination.[4]

After a review, I am unaware that ISN requested or the Contracting Officer approved ISN to incur costs above the contract ceiling. In any event, ISN has not provided any documentation showing either that it incurred the costs or that it had Department approval to incur the costs, despite an opportunity to do so. The history of administering the contract also belies the claim. The contract file discloses attempts by Department procurement staff to obtain a release of the contract from ISN, and to have ISN identify any claims prior to contract closeout. ISN did not identify any claims under the contract until now, despite many Department requests to do so.[5] I conclude that ISN's claim for costs above the ceiling is foreclosed by the contract terms, and that ISN has not demonstrated otherwise.

**Claim Nos. 3 & 4**
**(Damages Due to Department's**
**<u>Alleged Failure to Award a Follow On Contract)</u>**

ISN's claim alleges that "ISN was not awarded the follow-on to Contract 5C-Y-EIR-0028. As a result, ISN lost at least $1 million dollars in profit on the follow on portion of this contract." Dec. 14, 2004 letter at 4. On its face, I deny the claim as improper under the CDA. A vendor has an expectation only that it will receive the solicitation for a follow-on contract. FAR § 14.204-4(b). It has no legitimate expectation to be awarded a follow-on contract automatically. To the extent that ISN

---

[4]The corresponding provision of the FAR provides that: (1) the contractor must notify the Government if it expects to exceed 75% of the estimated cost within 60 days; *and* (2) the Government is not obligated to pay above estimated cost unless it specifically notifies the contractor that it will and provides a revised estimated cost. FAR § 52.232-20.

[5]ISN did execute a release of the successor contract, OC-G-EIR-0051, and did not reserve any claims in the release.

asserts a claim that the Government improperly awarded a follow-on contract, its should have filed a protest. Such a claim is not proper under the CDA, and is brought 20 years too late in any event.

Even if ISN's claim was proper under the CDA – which it is not – I would deny the claim as meritless because it is factually inaccurate. At the completion of Contract 5C-Y-EIR-0028 the Department conducted a competition for a successor contract and awarded it to ISN as Contract OC-G-EIR-0051.[6] Paragraph B-10 of Contract 5C-Y-EIR-0028 stated that: "The Government is in no way bound to purchase or lease any services and/or materials beyond the term of contract set forth [herein]." Exhibit 3. ISN not only received the contract it alleges it did not receive, but its contract explicitly disclaimed any expectation that it would receive a follow-on contract award.

In summary, I deny ISN's Claim Nos. 2, 3 & 4.

This is the final decision of the Contracting Officer. You may appeal this decision to the Department of Transportation Board of Contract Appeals (DOTBCA). If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the DOTBCA and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the DOTBCA, you may, solely at your election, proceed under the Board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the DOTBCA, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Very truly yours,

Nancy M. Feeney

Nancy M. Feeney, CPCM
Contracting Officer
Procurement Services Staff

Attachments

cc: John H. Svensson (w/Attachments)

---

[6]Since the Department competed Contract OC-G-EIR-0051, it was not a "follow-on" contract as contemplated by 41 U.S.C. § 253(d)(1)(b).

**DEFENSE CONTRACT MANAGEMENT AGENCY**
**DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND**
**217 EAST REDWOOD STREET, SUITE 1800**
**BALTIMORE, MARYLAND 21202-5299**

DCMAE-GTOK May 12, 2005

Information Systems and Networks, Inc.
Attn: Norman H. Singer, Esq.
10411 Motor City Drive, Suite 725
Bethesda, MD 20817

SUBJECT: Final Decision in Response to Information System & Networks Corporation's Certified Claim, dated December 14, 2004, Regarding Contract Nos. F19628-82-C-0108, et al.

Dear Mr. Singer:

This is in response to the certified claim dated December 14, 2004 ("the Claim Letter"), submitted by you on behalf of Information System & Networks Corporation ("ISN"). In your written submission, you asserted seven specific categories of claims related to nineteen contracts listed on Exhibit A to the Claim Letter. On February 10, 2005, you acknowledged in a letter to me that one of the contracts listed on Exhibit A, F19628-85-C-0035, had not been awarded to ISN, and is, therefore, not related to ISN's claims. As I explained to you in previous correspondence, I do not have cognizance over six of the 18 remaining contracts listed in the Claim Letter. With regard to the 12 contracts where I have cognizance over ISN's claims, either as Administrative Contracting Officer or through specific delegations from the cognizant Procuring Contracting Officers, this is the contracting officer's final decision on the following six categories of claims:

A. Unpaid contract fee and amounts due within contract ceilings.
B. Costs in excess of the contract ceilings.
C. Loss of profit on unawarded follow-on contracts.
D. Loss of unabsorbed overhead due to unawarded follow-on contracts.
E. Prompt Payment Act interest and Contract Disputes Act interest.
F. Attorney's fees.

A final decision for the resolution of the five indirect cost rate issues that comprise the seventh category contained in the Claim Letter was issued separately on February 9, 2005.

Contracting Officer's Final Decision

With regard to the claims identified as "A" through "F" above, I find as follows:

A. Unpaid contract fee and amounts due within contract ceilings

In the Claim Letter, ISN included a claim related to all 12 contracts for amounts ISN asserted were unreimbursed contract costs within the relevant contract cost ceilings. Also included was a claim for alleged unpaid fees. The amounts claimed for each contract were set forth on two spreadsheets attached to the Claim Letter as Exhibits B and C. These amounts are as follows:

| Contract Number | Cost to Contract Ceiling Owed (Without Fee) | Unpaid Invoiced Fee | Total Amount Due To ISN for Costs to Ceiling and Fee |
|---|---|---|---|
| MDA903-87-C-0004 | $47,189 | $31,541 | $78,730 |
| MDA903-88-C-0702 | 145,307 | 54,910 | 200,217 |
| MDA903-84-C-0222 | 45,413 | 10,331 | 55,744 |
| MDA903-83-D-1504 | 120,504 | 0 | 120,504 |
| F19628-82-C-0108 | 3,342 | 17,561 | 20,903 |
| F19628-85-C-0043 | 10,010 | 0 | 10,010 |
| N66604-87-D-0098 | 133,444 | 51,945 | 185,389 |
| N00024-85-C-6258 | 59,078 | 23,092 | 82,170 |
| DAAK20-84-C-0149 | 6,781 | 1,236 | 8,017 |
| DAAK70-83-C-0145 | 170,916 | 33,810 | 204,726 |
| DASG60-85-C-0035 | 538 | 6,864 | 7,402 |
| DLAH00-85-C-0010 | 32,003 | 15,080 | 47,083 |
| Total Claimed for Costs to Cost Ceiling and Fee | $774,525.00 | $246,370.00 | $1,020,895.00 |

I have examined the records pertaining to each of the following contracts, the amounts of costs and fees paid under each of them, the applicable cost ceilings, and the total allowable audited costs under each of them. I find that, by contract, (1) the total allowable contract costs claimed by ISN; (2) the total contract costs paid to ISN; (3) the total contract costs either not yet paid or overpaid, as the case may be, to ISN; (4)the total fee; (5) the fee paid to ISN; (6) the unpaid fee; and (7) the fee withheld are as follows:

| Contract Number | Total Costs Allowable | Total Costs Paid | Total Costs Unpaid/ <Overpaid> | Total Fee | Fee Paid | Fee Due | Fee Withheld |
|---|---|---|---|---|---|---|---|
| MDA903-87-C-0004 | $1,526,799 | $1,469,304 | $57,495 | $154,786 | $151,528 | $3,258 | $3,258 |
| MDA903-88-C-0702 | 2,206,070 | 2,210,583 | <4,513> | 197,515 | 142,606 | 54,909 | 7,406 |
| MDA903-84-C-0222 | 2,318,641 | 2,360,326 | <41,685> | 245,622 | 235,292 | 10,330 | 9,210 |
| MDA903-83-D-1504 | 2,677,274 | 2,606,614 | 70,660 | 265,259 | 265,259 | 0 | 0 |
| F19628-82-C-0108 | 1,241,418 | 1,277,529 | <36,111> | 122,617 | 122,017 | 600 | 600 |
| F19628-85-C-0043 | 450,693 | 444,670 | 6,023 | 38,990 | 38,990 | 0 | 0 |
| N66604-87-D-0098 | 5,224,588 | 5,538,778 | <314,190> | 345,780 | 282,988 | 62,792 | 12,966 |
| N00024-85-C-6258 | 2,488,254 | 2,574,218 | <85,964> | 213,292 | 186,328 | 26,964 | 7,998 |
| DAAK20-84-C-0149 | 72,208 | 69,535 | 2,673 | 5,797 | 5,790 | 7 | 7 |
| DAAK70-83-C-0145 | 2,641,011 | 2,717,322 | <76,311> | 225,419 | 191,027 | 34,392 | 8,452 |
| DASG60-85-C-0035 | 74,855 | 74,855 | 0 | 6,812 | 5,790 | 1,022 | 255 |
| DLAH00-85-C-0010 | 2,751,786 | 2,754,226 | <2,440> | 213,422 | 213,422 | 0 | 0 |
| Totals: | $23,673,597 | $24,097,960 | <$424,363> | $2,035,311 | $1,841,037 | $194,274 | $50,152 |

The amounts of unpaid fee which may be paid are limited by the amounts that I must withhold, pursuant to FAR 52.216-8, pending the receipt of a proper final invoice on each of these contracts. The total allowable costs take into consideration the resolution of all outstanding issues in regard to ISN's indirect rates except previously disallowed state income taxes, which are currently in litigation at the United States Court of Appeals for the Federal Circuit. Since the amount ISN has been overpaid through its interim billings on its contracts exceeds any amounts that would be due to it, I deny its claims for costs not yet paid within applicable contract ceilings and unpaid fees. I also note that ISN has never submitted interim invoices to the Government for these amounts.

For those contracts on which it has been determined that ISN owes the Government for over billing, a demand for payment in the amount of $280,241 is hereby made. Any amounts not paid within 30 days from the date of the demand will bear interest from the date of the demand. The interest rates shall be the rates established by the Secretary of the Treasury under Public law 92-41. The rate applicable on this date is 4.5%.

You may submit a proposal for deferment of collection if immediate payment is not practicable or if the amount is disputed.

The principal and interest shall be subject to collection by offset if the debt is not paid within 30 days from the date of the demand letter. If the debt is not paid within 30 days from the date of the demand letter, the indebtedness shall be transferred to the DFAS-CO (BKRD/CC) for further collection action.

Your payment, made payable to the "U.S. Treasury" should be forwarded to DFAS Columbus Center, South Entitlement Operations, P.O. Box 182264, Columbus, OH, 43218-2264.

The amount demanded represents the difference between the amounts of cost owed to the Government and the contractor, $424,363, with the contractor's billable fee, $144,122, being offset, leaving a debt of $280,241. This treatment is consistent with FAR 32.606(b), Contract Debt, which states in part: "In determining the amount of any contract debt, the responsible official shall fairly consider both the Government's claim and any contract claims by the contractor against the Government." The computation of the amount demanded, therefore, fairly considers the contractor's claims against the Government and they are administratively offset. The amount demanded was computed as follows:

| Contract Number | Total Costs Unpaid<Overpaid> | Fee Due Minus Fee Withhold | Costs + Fee |
|---|---|---|---|
| MDA903-87-C-0004 | $57,495 | 0 | $57,495 |
| MDA903-88-C-0702 | <4,513> | 47,503 | 42,990 |
| MDA903-84-C-0222 | <41,685> | 1,120 | <40,565> |
| MDA903-83-D-1504 | 70,660 | 0 | 70,660 |
| F19826-82-C-0180 | <36,111> | 0 | <36,111> |
| F19628-85-C-0043 | 36,023 | 0 | 6,023 |
| N66604-87-D-0098 | <314,190> | 49,826 | <264,364> |
| N00014-85-C-6258 | <85,964> | 18,966 | <66,998> |
| DAAK20-84-C-0149 | 2,673 | 0 | 2,673 |
| DAAK70-83-C-0145 | <76,311> | 25,940 | <50,371> |
| DASG60-85-C-0035 | 0 | 767 | 767 |
| DLAH00-85-C-0010 | <2,440> | 0 | <2,440> |
| Totals: | <$424,363> | $144,122 | <$280,241> |

B. Costs in excess of the contract ceilings.

ISN has claimed costs incurred in excess of contract ceilings on 10 of the contracts that are covered by this final decision. The reason cited in the Claim Letter is "due to ISN having to use interim indirect rates approved by the defendant." Each of the ten contracts contained the FAR Clause 52.232-20, Limitation of Cost (APR 1984). The pertinent provisions of that clause state:

> (a) The parties estimate the performance of this contract, exclusive of any fee, will not cost the Government more than (1) the estimated cost specified in the Schedule or, (2) if this is a cost-sharing contract, the Government's share of the estimated cost specified in the Schedule. The Contractor agrees to use its best efforts to perform the work specified in the Schedule and all obligations under this contract within the estimated costs, which, if this is a cost-sharing contract, includes both the Government's and Contractor's share of the cost.

(b) The Contractor shall notify the Contracting Officer in writing whenever it has reason to believe that –

(1) The costs the contractor expects to incur under this contract in the next 60 days, when added to all costs previously incurred, will exceed 75 percent of the estimated cost specified in the Schedule.; or

(2) The total cost for the performance of this contract, exclusive of any fee, will be greater than or substantially less than had been previously estimated.

(c ) As part of this notification, the Contractor shall provide the Contracting Officer a revised estimate of the total cost of performing this contract.

(d) Except as required by other provisions of this contract, specifically citing and stated to be an exception to this clause-

(1) The Government is not obligated to reimburse the Contractor for costs incurred in excess of (i) the estimated cost specified in the Schedule or, (ii) if this is a cost-sharing contract, the estimated cots cost to the Government specified in the Schedule; and

(2) The Contractor is not obligated to continue performance under this contract (including actions under the termination clause of this contract) or otherwise incur costs in excess of the estimated cost specified in the Schedule, until the Contracting Officer (i) notifies the Contractor in writing that the estimates cost has been increased and (ii) provides a revised estimated total cost of performing this contract. If this is a cost-sharing contract, the increase shall be allocated in accordance with the formula specified in the Schedule.

(e) No notice, communication, or representation in any form other than that specified in the subparagraph (d)(2) above, or from any person other than the Contracting Officer, shall affect this contract's estimated cost to the Government. In the absence of the specified notice, the Government is not obligated to reimburse the Contractor for any costs in excess of the estimated cost or, or if this is a cost-sharing contract, for any costs in excess of the estimated cost to the Government specified in the Schedule, whether those excess costs were incurred during the course of the contract or as a result of termination.

Of the ten contracts in question (all of the 12 contracts included in your claim with the exceptions of MDA903-84-C-0222 and MDA903-83-D-1504), ISN gave the required notice of an overrun with a revised estimate to complete on only one contract, DLAH00-85-C-0010. This was done by letter dated November 11, 1989. The reasons cited for

the overrun related to technical problems that had caused delays in completing the project. There is no mention in this letter of costs being incurred above the costs ceiling due to indirect cost adjustments. Similarly, there is no mention of costs being incurred above the cost ceiling due to indirect cost adjustments in any correspondence produced by ISN related to any of these ten contracts.

My conclusion is that ISN did not comply with FAR 52.232-20, as required, and that the indirect cost rate issues at the heart of your December 14, 2004 claim, where they may apply, were well known to ISN and were certainly not unforeseeable.

Since the claimed overruns were not identified in any required notice to the cognizant Contracting Officer and since you have provided no evidence that the overruns were unforeseeable during contract performance, I deny this portion of your claim.

C. Loss of profit on unawarded follow-on contracts.

ISN has claimed a loss of profit due to the alleged failure of the Government to award follow-on contracts. Specifically, this claim applies to contracts F19628-82-C-0108 and MDA903-84-C-0222. The claim states that, "contracts contained options or follow-ons, which the Government did not exercise in favor of ISN because ISN did not have final indirect rates."

Contract F19628-82-C-0108 was awarded in August 1982 to analyze, evaluate and make recommendations on the C3CM database system. The contract was scheduled for completion on September 30, 1983, however, due to changes in tasking under the contract, it was eventually extended to November 30, 1984. The option periods were not required by the buying activity and were not exercised. There was no further follow-on contract awarded for the services procured under this contract.

Contract MDA903-84-C-0222 was awarded in April 1984 for a contractor to provide system administration, operational support, and maintenance services for the Pentagon's HIOS (Headquarters Integrated Office System) prototype network. The buying activity exercised the Option I period by modification P00001 and the Option II period by modification P00003. This extended the performance period through September 30, 1985. There were no further option periods. Subsequent to this, ISN was awarded another contract to provide the same services for the HIOS network from October 1, 1987, with an exercised option through September 30, 1988. This was the subject of contact MDA903-88-C-0702. The services provided under these contracts were not unique and the services were procured by a competitive award. ISN had options exercised in both of these contracts, and a lack of final rates during the period of contact MDA903-84-C-0222 apparently had no impact upon the decision to award ISN a follow-on contract two years later. Based upon this, it is clear that your claim is in error and I deny it in regard to both of the contracts that you have cited.

D. Loss of unabsorbed overhead due to unawarded follow-on contracts.

ISN has claimed a loss for unabsorbed overhead due to the failure of the Government to award follow-on contracts. Since there was no loss of profits to ISN for a failure to award follow-on contracts as cited in the claim (Paragraph C.), then there can not be any loss due to unabsorbed overhead. This portion of your claim is denied.

E. Prompt Payment Act interest and Contract Disputes Act interest.

With regard to ISN's claim for interest under the Prompt Payment Act ("PPA"), the claim states that proper invoices were submitted to the cognizant agency, with substantiating documentation, and the Government withheld or failed to pay the invoices. This claim applies to all of the contracts included in your claim. A list of such invoices was requested from ISN, however the contractor failed to identify those requests for payment to which the interest claimed was alleged to apply.

FAR Clause 52.232-25, Prompt Payment (FEB 1988), in that portion applicable to interim payments on cost type contracts, states:

> (b) Contract Financing Payments
>
> (1) For purposes of this clause, "contract financing payment" means a Government disbursement of monies to a Contractor under a contract clause or other authorization prior to acceptance of supplies or services by the Government. Contract financing payments include advance payments, progress payments based on cost under the clause at 52.232-16, Progress Payments, progress payments based on a percentage or stage of completion (32.102(e)(1)) other than those made under the clause at 52.232-5, Payments Under Fixed-Price Construction Contracts, or the clause at 52.232-10, Payments Under Fixed-Price Architect-Engineer Contracts, and interim payments on cost type contracts.
>
> * * *
>
> (4) Contract financing payments shall not be assessed an interest penalty for payment delays.

Because ISN has failed to provide any specific information concerning the requests for payment to which its PPA claim is alleged to apply, I deny ISN's claim for PPA interest in its entirety.

With regard to ISN's claim for interest under the Contract Disputes Act, Paragraph (g) of FAR 52.233-1, Disputes (APR 1984), provides for the payment of interest by the Government "on the amount found due and unpaid from (1) the date the Contracting Officer receives the claim (properly certified if required), or (2) the date payment otherwise would be due, if that date is later, until the date of payment." For five specific contracts included in ISN's claim, I have found that unpaid cost and/or fees

are allowable, but have not been included in requests for payments submitted to the Government. Moreover, the overpayments made to ISN on the seven remaining contracts offset the allowable costs and fees incurred. For these reasons, no amounts are due to ISN based upon its claims. Therefore, I find that no interest is due to ISN under the Contract Disputes Act.

F. Attorney's fees

The Claim Letter implies the Equal Access to Justice Act is applicable, and that either the Government's position will be found to not be substantially justified, or ISN's claim will establish a substantial benefit for other contractors in similar circumstances. The Equal Access to Justice Act is not applicable to the consideration of CDA claims by a contracting officer. The appropriate guidance in this regard is FAR 31.204-47, Costs related to legal and other proceedings. Paragraph (f) of that cost principle states, in pertinent part:

> (f) Costs not covered elsewhere in this subsection are unallowable if incurred in connection with:
>
> (1) Defense against Federal Government claims or appeals or the prosecution of claims or appeals against the Federal Government . . . .

I find that any costs incurred in the prosecution of ISN claims contained in the Claim Letter are unallowable, and I deny your claim for attorney fees and expenses related to the prosecution of those claims.

This is the final decision of the Contracting Officer. You may appeal the decision to the Armed Services Board of Contract Appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Services Board of Contract Appeals and provide a copy to the Administrative Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the Armed Services Board of Contract Appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

JOHN H. SVENSSON
Administrative Contracting Officer

cc: File/GTOK, DFAS Columbus Center, DCMAE-GTG, DCAA Silver Spring Branch