# In the United States Court of Federal Claims

Nos. 06-387C & 13-988C
**CONSOLIDATED**
(Filed: April, 3 2018)

| | |
|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Rule 37(b)(2) Sanction and Expert Reports Stricken |

**ORDER GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION FOR SANCTIONS**

Pursuant to Rule 37(b)(2) of the Rules of the Court of Federal Claims, defendant, the United States ("government"), has moved to dismiss Counts I, II, III, and IX of the complaint filed by the plaintiff, Information Systems & Networks Corp. ("ISN"), or in the alternative to strike the reports of ISN's witnesses, Cheryl Anderson and Bill Foote, and to also preclude them from testifying at trial. Def.'s Mot., ECF No. 203. The government bases its motion for sanctions on ISN's filing of reports by Cheryl Anderson and Bill Foote, whom the government argues are "experts," but whom ISN contends have filed reports as "non-experts." The government argues that the reports were filed in contravention of the court's August 23, 2017 discovery order which by its terms precludes ISN from presenting any expert witnesses or relying on expert reports to

support ISN's affirmative case on Counts I, II, III, and IX. In response, the plaintiff argues that the reports should not be viewed as expert reports and thus were not filed in contravention of the court's August 23, 2017 discovery order.

Under Rule 37(b)(2), the court is permitted to impose "just sanctions" when a "party fails to obey an order or to provide or permit discovery[.]" This includes the possibility of prohibiting the offending party from supporting their claims with evidence. Rule 37(b)(2)(A)(ii). Courts have generally imposed a proportionality standard in crafting an appropriate sanction. *See Northrop Grumman Systems Corps. v. United States*, 126 Fed. Cl. 602, 607 (2016). "A rule 37 sanction is appropriate where the failure is due, not to inability or other justifiable excuse but to some fault of the party against whom it is sought." *Id.* (citations omitted). Here, the court finds that a sanction under Rule 37(b)(2) is appropriate on the grounds that the reports filed by the plaintiff were known to be expert reports that were written by persons without personal knowledge of ISN's business records. It is also apparent from Ms. Anderson's report, as discussed below, that ISN had accountants and consultants who were familiar with ISN's books and records and thus had individuals available who could have filed non-expert reports on ISN's behalf. With regard to Mr. Foote, the record shows that Mr. Foote filed an earlier report as an expert and that the report now at issue contains many of the same opinions he previously offered as an expert. *See* ECF No. 161. Thus, the Anderson and Foote reports are expert reports and will be stricken. ISN will also be precluded from relying on Cheryl Anderson or Bill Foote as Rule 30(b)(6) witnesses or calling them to testify at trial.

## I. The Court's August 23, 2017 Discovery Order

On August 23, 2017, this court denied ISN's July 26, 2017 motion (ECF No. 190) for reconsideration of the court's July 24, 2017 order (ECF No. 189) denying ISN's request for another enlargement of time to file the expert reports due under the discovery schedule set by court order. ECF No. 193. In denying reconsideration, the court explained that given ISN's repeated past failures to provide its expert reports to the government on the deadline specified in the court's three prior discovery orders, the court had come to believe that another three-day extension of time for the plaintiff to file expert reports was not justified. *Id.* When the reports were not produced on the date specified, the court ruled that "plaintiff shall proceed in this matter without an expert or an expert report in its affirmative case" with regard to Counts I, II, III, and IX. *Id*. at 5. The court, however, stated that ISN would be allowed to file a "non-expert report regarding Counts I, II, III, and IX," which the court explained needed to include "schedules, spreadsheets, and calculations in native-file format that specify and set forth all of plaintiff's damages and claimed indirect cost rates for each of the fiscal years and rates for which there are not signed indirect rate agreements from 1982 through 2000." *Id.* ISN was also required to "identify one or more RCFC 30(b)(6) witnesses to address (1) plaintiff's calculation of rates, claims for contract payments, offsets, and credits; or (2) any other claims being asserted by plaintiff." *Id.* In addition, concurrently with each report, with respect to Counts I, II, and III, each party was required to produce in native-file format:

> (1) the back-up schedules and calculations showing the adjustments to individual indirect cost pools; (2) the calculation of individual, indirect cost rates, including the

> applicable pools and bases; and (3) the application of the rates to the applicable bases for each contract.

*Id.* at 6.

With regard to Count IX, the plaintiff was required to "produce in native file format all exhibits and supporting schedules, spreadsheets, and calculations for any claims for offsets, credits, or other payments or charges." *Id.* For each of the documents relied upon or used in the calculations, each party was either required to identify the documents by Bates number(s) or to produce the document in native-file format, if available, or produce a PDF copy. *Id.*

**II. Legal Standards**

The Federal Rules of Evidence make a distinction between fact witnesses (Fed. R. Evid. 602) and expert witnesses (Fed. R. Evid. 702). Fact witnesses may testify regarding matters within their personal knowledge and are not permitted to testify on matters that are based upon scientific, technical, or specialized knowledge within the scope of expert opinion, as defined by Fed. R. Evid. 702. Specifically, under Fed. R. Evid. 602, a fact witness may testify as to a matter only if "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Pursuant to Fed. R. Evid. 701, a witness not testifying as an expert may provide testimony in the form of an opinion provided that the opinion is:

> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Thus, under Fed. R. Evid. 701, in order for a fact witness to render an opinion, the witness must have first-hand knowledge of the subject about which the witness is testifying[1] and the opinion must be based upon what the witness perceived. *First Annapolis Bancorp, Inc. v. United States*, 72 Fed. Cl. 204, 207-8 (2006). "If a witness's testimony fails to meet any one of the three foundational requirements [of Fed. R. Evid. 701], it is not admissible." *Authentic Apparel Group, LLC v. United States*, 134 Fed. Cl.78, 81 (2017). As the 2000 Advisory Committee Notes to Fed. R. Evid. 701 explain, the reason section (c) was added to Rule 701 was to "eliminate the risk that the reliability requirements set forth in Rule 702[2] will be evaded through the simple expedient of proffering an expert in lay witness clothing[.]" *First Annapolis*, 72 Fed. Cl. at 207 (quoting 2000 Advisory Committee Notes to Fed. R. Evid. 701).

A witness who is qualified by "knowledge, skill, expertise, training, or education" may testify in the form of an opinion and is considered an expert. Fed. R. Evid. 702. Expert witnesses can testify as to matters that are not based on personal observation. Fed. R. Evid. 703. Indeed, in rendering an expert opinion, the underlying facts or data

---

[1] The requirement that lay opinion be based upon the perception of the witness imports the personal knowledge standard of Rule 602 into Rule 701. *See United States v. Bush*, 405 F.3d 909, 916 n.2 (10th Cir. 2005) (quoting 29 Fed. Prac. & Proc. Evid. § 6254 (2d ed)).

[2] Fed. R. Evid. 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

need not necessarily be admissible. Fed. R. Evid. 703. There are circumstances, however, where courts have allowed a Fed. R. Evid. 701 witness with specialized knowledge to testify as a lay witness. *See*, *e.g.*, *Teen-Ed., Inc. v. Kimball*, 620 F.2d. 399, 402-03 (3rd. Cir. 1980); *First Annapolis Bancorp, Inc. v. United States*, 72 Fed. Cl. 204, 207-8 (2006). In *Teen-Ed., Inc.*, the Third Circuit held that an accountant could testify about lost profits by a corporation because of his "personal knowledge of [their] balance sheets[.]" *Teen-Ed., Inc.* at 403. The Third Circuit found that because he was Teen-Ed.'s accountant, he had sufficient personal knowledge to opine as a lay witness about lost profits based on his perceptions of Teen-Ed.'s records. *Id.* Similarly, this court in *First Annapolis Bankcorp, Inc.* concluded that an accountant who could not testify as an expert was able to offer opinion testimony as a lay witness because he based his opinion on "his understanding of bank and FDIC records gleaned during his employment[.]" *First Annapolis Bankcorp* at 208. Tested by these standards, it is clear for the reasons stated below that Cheryl Anderson and William Foote are not lay witnesses who are basing their opinions on personal knowledge and are properly characterized as "experts."

## III. The Reports of Cheryl Z. Anderson And William Foote Are Expert Reports

Ms. Anderson's report, filed on September 22, 2017, is entitled "Non-Expert Report of Cheryl Zeigler Anderson" and comprises ECF Nos. 195-1 through 195-5. Mr. Foote's report, also filed on that date, is entitled "Report of Bill Foote" and comprises ECF Nos. 195-6 through 195-7. Each report is examined in turn.

### A. Ms. Anderson's Report

It is not disputed that Ms. Anderson does not have any personal knowledge of ISN's business accounts. She does not represent that she played any role in running ISN's day-to-day operations, in working as an accountant for ISN during contract performance, or in assisting ISN in preparing its claims for any Defense Contract Audit Agency ("DCAA") audits. Ms. Anderson's report starts with her "Statement of Qualifications," in which she describes her academic training, professional development, and certifications, including her license as a certified public accountant, and her teaching experience at the Defense Contract Audit Institute. ECF No. 195-2 at 3 and 22. She also identifies her experience testifying as an expert government witness. *Id.* at 3. Ms. Anderson identifies herself as a director with Redstone Government Consulting, Inc. ("Redstone"), which "offers a variety of services" for government contractors, including "contract claims and disputes, evaluation, education and training, monitoring, and DCAA audit preparation." *Id*. Ms. Anderson's resume states that she has been a director at Redstone since January 2013. *Id.* at 21. Before that, from 1977 through November 2012, Ms. Anderson worked at DCAA in various capacities, from an auditor to a branch director and regional audit manager. *Id.* at 21-22.

In her report, Ms. Anderson divides her analysis into the four counts presently at issue in this litigation. With regard to Count I, Ms. Anderson explains that she understands that "ISN is seeking a declaration from the Court . . . that its final indirect rates should be used for each of the years from 1985 through 2000 and all contracts for those years[.]" *Id*. at 5. Ms. Anderson's task was to prepare new final indirect rates for ISN. Ms. Anderson explains that in preparing final indirect rates, she "prepared an

indirect cost model, referred to as the [Defense Contract Audit Manual ("DCAM")] model, to assist in verifying ISN's Final Indirect Rates for 1985-2000." *Id.* at 6. She explained that the "model is based on best practices [she] used while working with DCAA[.]" *Id.* She goes on to explain that she made six "major adjustments" to her DCAM model "to compute adjusted ISN indirect rates for 1988." *Id.* at 7. For one of those adjustments, she explains that she relied on Bill Foote's September 22, 2017 "non-expert" report. *Id.* For the remaining years, she explains that ISN provided her with a list of proposed adjustments from which she selected adjustments that she believed were applicable to the year being evaluated. *Id.* at 8. For example, Ms. Anderson made the following adjustments for the DCAM model for 1989-1995: "Transfer franchise taxes from Overhead to G&A[,] Transfer indirect labor from Overhead to G&A[,] Transfer indirect labor fringe expense from Overhead to G&A[,] Transfer B&P labor, corporate allocations[,] and business development from Overhead to G&A[,] Transfer corporate allocations from Overhead to G&A, Transfer fringe expenses on G&A labor from Overhead to G&A[,] [and] Confirming and correcting Indirect Labor based on Jamis Cost detail." *Id.* at 11. Based on these various adjustments to her model, Ms. Anderson opined that ISN is entitled to a total of $55,299,338.00 for the years between 1985 and 2000. *Id*. at 14. In her report, Ms. Anderson acknowledges that the information she used to arrive at this amount came from ISN and was prepared by a team working for ISN. Specifically, she states in her report that ISN's team consisted of "three CPAs, two accountants and three other consultants" who went "through the reams of documents on

over 400 contracts that the company had executed in the past 30 years to gather the correct information[.]" *Id.* at 4-5.

For Count II, Ms. Anderson begins her analysis by stating that the "calculations related to this Count are based on the indirect rates in Count I." *Id.* at 15. Ms. Anderson explains that based on her calculations, ISN is claiming a total of $4,098,171.00 "on the 17 flexibly-priced contracts" on unpaid vouchers, which includes the new indirect labor rates she calculated using her DCAM model. *Id.* at 15-17. In her report, Ms. Anderson explains that she reached her findings as to the amount she maintains ISN is due under Count II by applying the indirect rates she established under her analysis done for Count I, by "verif[ying] the calculations" of the vouchers submitted by ISN, and by "verif[ying] [sic] the underlying documents, the details of the payment history, and the claimed amounts for five" of the seventeen contracts. *Id.* at 16.

For Count III, Ms. Anderson explains in her report that she understands that ISN "seeks a monetary judgment for various offsets taken by the Government on ISN invoices years after the work on the contract." *Id*. at 17. In the report, Ms. Anderson states her opinion that for the seventeen contracts at issue "there was no justification or basis given for taking these offsets; therefore, ISN should be reimbursed for them[.]" *Id.* Ms. Anderson further states in her report that "ISN is not currently claiming any additional Offsets/DFAS drawals which are related to costs for these 17 contracts." *Id.* She explains that she anticipates that new vouchers will be submitted when final indirect rates are set. *Id.*

Finally, for Count IX Ms. Anderson once again explains in her report that her "calculations related to this Count are based on the indirect rates in Count I." *Id.* at 18. Ms. Anderson explains that under Count IX ISN "seeks a monetary judgment for financing costs of ISN's borrowing which were directly caused by the conduct of the Government." *Id.* Ms. Anderson asserts in her report that ISN is seeking $70,800,840.00 for costs ISN incurred borrowing money (apparently from its shareholder, Ms. Roma Malkani[3]) because the government had failed to pay ISN the proper indirect rates under ISN's contracts. *Id.* at 19-20. In asserting ISN's right to this amount, Ms. Anderson has apparently applied her professional judgment that the amount claimed is proper.

Based on the court's review of Ms. Anderson's resume and her report, as discussed above, it is clear that Ms. Anderson's report is an expert report that contains numerous "expert opinions" as to what are proper indirect rates for ISN based on her application of and adjustments to her DCAM model. All of her opinions are based on financial records and data she received from others. She was not one of the many ISN accountants or consultants responsible for preparing ISN's contract claims or DCAA audit submissions. Rather, without any historical knowledge of ISN's records or any involvement in preparing ISN's contract claims or DCAA audit submissions, Ms.

[3] According to Mr. Foote's report, ISN borrowed money from Ms. Roma Malkani, the sole stockholder, as part of a stockholder revolving line of credit due to the failure of the government to make full payments under the terms of the contracts. ECF No. 195-6 at 7-8; *See Information Systems & Networks Corporation*, 437 F.3d 1173 (Fed. Cir. 2006)(Ms. Malkani's status as the sole stockholder). According to Mr. Foote, "ISN is seeking reimbursement for financing costs" that were incurred per the terms of the promissory note entered into between ISN and Ms. Malkani. ECF No. 195-6 at 8.

Anderson applied her expertise to formulate opinions as to the correctness of ISN's current claims. Ms. Anderson's testimony is clearly the testimony of an expert and not of a lay witness. In this regard, Ms. Anderson's testimony contrasts with the lay opinion testimony by an accountant provided in *First Annapolis*. As discussed above, in *First Annapolis*, the court concluded that testimony from an accountant who provided "limited testimony regarding the bank's condition based upon his understanding of bank and FDIC records gleaned during his employment is not expert [testimony]." *First Annapolis*, 72 Fed. Cl. at 208. Here, there is no indication that Ms. Anderson was ever an ISN employee. Moreover, ISN had professional personnel available who presumably could have prepared a report that may have satisfied the criteria for lay opinion testimony under Fed. R. Evid. 701. ISN chose not to do so and thus it failed to comply with the Court's August 23, 2017 order.

Based on the foregoing, ISN violated the Court's August 23, 2017 order and Ms. Anderson's report will be stricken. In addition, Ms. Anderson will be precluded from testifying or serving as a Rule 30(b)(6) witness for ISN.

**B. Mr. Foote's Report**

A review of Mr. Foote's report confirms that he also submitted an expert report in contravention of the Court's August 23, 2017 order. Mr. Foote's resume, included as part of his report, establishes that he has provided financial advisory services at the firm of Aronson LLC since 1996 and that he is a licensed accountant. ECF No. 195-6 at 15-17; Def.'s Mot, App at. A21. His resume further states that he has testified as an expert witness in more than 40 proceedings between 2007 and 2017. ECF No. 195-6 at 16-17.

There is no indication on his resume or in the substance of his report that Mr. Foote had any contemporaneous involvement in preparing ISN's cost submissions as an employee or consultant to ISN before this litigation. *Id.* at 15-17. Indeed, ISN previously identified Mr. Foote as a potential expert witness in Plaintiff's Amended Expert Disclosures served on the Government's counsel. Def's Mot, App. at A25.[4] ISN also identified Mr. Foote as a potential witness under Fed. R. Evid. 702, 703, and 705 on November 4, 2016, in Plaintiff's Expert Disclosure. ECF No. 161 at 2-3. ISN filed another report by Mr. Foote, entitled, "Expert Report of Bill Foote, CPA," on November 4, 2016. *Id.* at 36-56. Despite the court's August 23, 2017 order, ISN has submitted another report from Mr. Foote that it has labeled as a *non-expert* report even though it contains many of the same opinions that were set forth in Mr. Foote's November 4, 2016 *expert* report.

In his "non-expert" report, Mr. Foote provides analysis regarding shareholder compensation which is relevant to indirect cost rates and Count I. He also discusses the interest ISN allegedly incurred as a result of ISN not receiving the full amount of payment he believed ISN was entitled to under its contracts. ISN contends that this necessitated ISN taking out loans from its shareholder, Ms. Malkani. *See* n.3. This amount is relevant to the amount at issue in Count IX. ECF No. 195-6 at 1-4. Mr. Foote explains in his report that he was tasked to "(i) calculate, based on a specified definition, revised amounts of compensation with respect to ISN's shareholder during the Applicable Years; (ii) perform a series of financial cost calculations . . .; and (iii) analyze

[4] Mr. Foote issued his first expert report on March 9, 2012. Def.'s Mot., App. at A27-A4.

the financial health and working capital position of ISN during the Applicable Years." *Id.* at 2. Mr. Foote calculated the revised shareholder compensation by calculating the shareholder compensation for each of the applicable years, unused annual leave, and estimated taxes using documents provided by ISN. *Id*. at 4-6. Next, with regard to the interest and other financial costs incurred by ISN, Mr. Foote calculated the interest based on six different scenarios using figures either provided to him by ISN or by Ms. Anderson in her report. *Id.* at 6-8. These calculations resulted in his finding that ISN is entitled to an amount equal to $162,824,414.00 for interest on the $70 million ISN was not paid on its indirect rates under Count I and another $11,520,819 related to interest accrued on amounts claimed under Count II. *Id.* at 7-8.

Based on the court's review of Mr. Foote's resume and his report, it is clear that Mr. Foote's report includes opinions that are not based upon his personal observations or first-hand knowledge of ISN's records. First, a comparison of Mr. Foote's "non-expert" report and the expert reports previously filed with the Court, shows little difference in style or substance. Additionally, Mr. Foote notes that "[t]his revised report supersedes the Report of Bill Foote, CPA dated March 9, 2013 and November 4, 2016." *Id.* at 1. Thus, the subject report, like the previous two, can be fairly characterized as an "expert report." A review of his latest report clearly indicates that his report states opinions based on his technical expertise in the fields of accounting and taxation. Moreover, at no time does Mr. Foote represent that he worked for ISN or worked on preparing ISN's initial contract claims. Finally, as noted previously, it appears that ISN could have complied with the Court's order by relying on an employee, accountant, or consultant

who, like the accountant in *First Annapolis*, had personal knowledge of ISN's records and could have offered opinions as a lay witness.

For these reasons, ISN's submission of Mr. Foote's report was in clear contravention of the Court's August 23, 2017 order. As such, Mr. Foote's report will be stricken and he will not be allowed to testify as a Rule 30(b)(6) witness or as a witness at trial.

## CONCLUSION

For the above-stated reasons, the government's motion to strike the reports submitted by ISN from Ms. Anderson and Mr. Foote on September 22, 2017, and to preclude them from testifying at trial in ISN's affirmative case as a sanction under Rule 37(b)(2) is **GRANTED.** The government's request to dismiss Counts I, II, III, and IX of the complaint is **DENIED.**

In granting the government's motion for sanctions today, the court is not precluding ISN from arguing on summary judgment that its claims under Count I, II, III, and IX are based on proper interpretations of the rules and regulations governing payment of government contracts. ISN has, however, forfeited the right to present any expert opinion testimony to support ISN's claims under Counts I, II, III, and IX.

The parties shall propose a schedule for resolving Counts I, II, III, and IX in accordance with this order by **April 26, 2018.**

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge