# In the United States Court of Federal Claims

Nos. 06-387C & 13-988C
CONSOLIDATED
(Filed: May 26, 2020)

| | |
|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION, | Accord and Satisfaction; Release; Apparent Authority; Ratification; Final Indirect Cost Rates |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

*Norman Singer*, Bethesda, MD, for plaintiff.

*Sheryl Floyd*, United States Department of Justice, Civil Division, Washington, DC, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Kenneth M. Dintzer*, Deputy Director, for defendant.

## OPINION

**FIRESTONE**, *Senior Judge.*

Pending before the court in these consolidated breach of contract cases are the parties' cross motions for partial summary judgment and associated motions to strike. Defendant the United States (government) moves for partial summary judgment regarding certain issues arising under Counts I, II, and III of plaintiff Information Systems & Networks Corporation's (ISN) complaint in case No. 13-988C. These counts involve the calculation of final indirect cost rates and allegedly unpaid costs and

improperly withheld amounts associated with the seventeen contracts between ISN and the government that are at issue.  ISN cross moves for partial summary judgment regarding certain issues arising under Count I, involving the calculation of final indirect cost rates, only.

For the reasons that follow, the government's motion for partial summary judgment is **GRANTED IN PART** and **DEFERRED IN PART**, and ISN's cross motion is **DENIED**.  In addition, ISN's motion to strike is **DEFERRED**, and the government's motion to strike or to file a surreply is **DENIED AS MOOT**.

In this opinion, the court holds that the unambiguous terms of an earlier settlement agreement between the United States and ISN bar ISN's claim for declaratory relief regarding the correct final indirect cost rates for fiscal years (FY) 1987-1995.  The court also finds that, as ISN concedes, ISN's claims regarding the correct final indirect cost rates for FY 1982 are governed by an earlier indirect cost rate agreement.  The court also holds that final rate agreements between ISN and the Defense Contract Audit Agency (DCAA) signed by ISN's Chief Financial Officer in 2002 bar ISN's claims regarding the correct final general and administrative rates covered by those agreements.

The court defers ruling on the remainder of the government's partial summary judgment motion.  This is because, based on the filings made thus far in these consolidated cases, the court has concluded that determining the final indirect cost rates for all of the years in question will significantly narrow the parties' dispute regarding Counts I, II, and III of the complaint and the government's counterclaim.  As ordered in more detail at the conclusion of this opinion, the parties by **June 9, 2020** are required to

file a joint status report regarding what, if any, indirect cost rate issues remain with a proposal for resolving those indirect cost rate issues.  After receiving the joint status report, the court will schedule a status conference with the parties to address next steps in this litigation.

## I.  BACKGROUND

These consolidated cases arise out of cost-reimbursement contracts entered in the 1980s between ISN and various federal agencies.  On December 14, 2004, ISN filed a Contract Disputes Act (CDA) claim with an administrative contracting officer (ACO) at the Defense Contract Management Agency (DCMA).  *See* Def.'s App. 11-17, ECF No. 282-2 through ECF No. 282-9 (CDA claim certified by Roma Malkani, President and Chief Executive Officer of ISN).  In the 2004 CDA claim, ISN raised seven claims supporting its contention that it was owed money on the nineteen contracts then at issue. *See id.* at 11.

As relevant here, one of ISN's seven claims was for "final determination of all outstanding contractual issues to establish final [indirect cost] rates." *Id.* at 14.  ISN sought "the issuance of final rate approvals for FY 1985-1996." *Id.*  Indirect costs (costs not associated with a specific cost objective) are distributed to specific contracts proportionally, using an indirect cost rate.  Indirect cost rates are generally calculated as a percentage that expresses the ratios of different types of indirect expenses (i.e., fringe, overhead, or general and administrative costs) incurred by the contractor in a certain period of time to direct labor costs or some other base.  *See id.* at 12-13 (ISN CDA claim describing indirect cost rates); *see also Data Comput. Corp. v. United States*, 80 Fed. Cl.

3

606, 608 (2008) (describing indirect cost rates).  These rates are then used to calculate final contract payment to determine whether the government owes additional money to the contractor.  May 7, 2020 Tr. 15-18, ECF No. 301 (describing payment process).  ISN in its 2004 CDA claim sought resolution of how "cost of ownership, cost of bonuses, cost of pension, cost of ownership-equipment rental, and corporate and [bid and proposal] cost allocation" would be incorporated into the final indirect cost rates calculation for its contracts for FY 1985-1996.  Def.'s App. 14.  As noted above, ISN characterized these issues as "all outstanding contractual issues to establish final rates."  *Id.*

On February 9, 2005, the ACO issued a final decision on ISN's final indirect cost rates claim, disallowing some costs and determining final fringe and overhead indirect cost rates applicable to "all Government flexibly price[d] contracts and subcontracts" for FY 1987-1995, as well as interim general and administrative (G&A) indirect cost rates for FY 1987-1995.[1]  *Id.* at 18-24.

On May 12, 2005, the ACO addressed ISN's remaining six claims, involving allegedly unpaid contract amounts, costs over contract ceilings, lost profits and unabsorbed overhead, interest, and attorneys' fees.  Pl.'s App. 68, ECF No. 283-1.  In this

---

[1]  Final G&A rates could not be established because those rates were the subject of pending litigation at the time.  Def.'s App. 18.  Specifically, ISN had challenged in this court the exclusion of ISN's claimed Subchapter S state income taxes from ISN's proposed G&A rates.  On February 6, 2006, the Federal Circuit ruled in favor of the government, effectively disallowing ISN's inclusion of its owner's personal state income taxes in the G&A pool.  *See Info. Sys. & Networks Corp. v. United States*, 437 F.3d 1173, 1177-78 (Fed. Cir. 2006).

decision, the ACO determined that for eleven contracts over which he had authority, the government had *overpaid* ISN by a total of $280,241.[2]  *Id.* at 70.

ISN challenged the ACO's February 9, 2005 decision regarding indirect cost rates in this court in case No. 06-99C.  ISN claimed that the disallowed costs and the rates were "unjustified and unreasonable."  Def.'s App. 34 (No. 06-99C Am. Compl. ¶¶ 22-23).  On October 25, 2010, the parties in case No. 06-99C entered into a settlement agreement.  Def.'s App. 42.  The settlement agreement recognized that ISN, in its 2004 CDA claim, had requested "the resolution of final indirect cost rates."  *Id.* at 38.  ISN agreed to settle its amended complaint so long as the government incorporated certain allowances for office rent and equipment rent in ISN's final indirect cost rates for FY 1987-1995.  *Id.* at 39-42.  The government agreed to incorporate those allowances "for purposes of calculating final indirect cost rates, in addition to the allowances already allowed pursuant to the contracting officer's February 9, 2005 final decision."  *Id.* at 39.

Under the terms of the settlement agreement, ISN also agreed to release:

> all claims, known or unknown, including all claims for monetary and declaratory relief, against the United States . . . arising out of, set forth, related to, or otherwise involved in Case No. 06-99C, including but not limited to, any claims for costs, expenses, attorney fees, and damages of any sort, with the exception of claims for payment resulting from the Government's calculation of final indirect cost rates that ISN might present to the agencies with which it contracted.

---

[2] Of the nineteen contracts asserted in ISN's 2004 CDA claim, the ACO determined he had authority or delegated authority over twelve. Pl.'s App. 68.  It was later determined that one of these twelve was listed incorrectly in Exhibit A to ISN's claim and the ACO did not have authority over the correct contract.  The other eleven ISN contracts were included in the ACO's May 12, 2005 final decision.  *See* No. 13-988C Compl., Ex. B at 48-51 (discussing the eleven contracts previously appropriately before the ACO in the May 2005 decision).

Def.'s App. 40.  Based on this agreement, case No. 06-99C was dismissed.  The government provided ISN the indirect rates calculated in accordance with the settlement agreement in February 2011.  No. 13-988C Compl. ¶ 29.

Meanwhile, on May 11, 2006, ISN filed a separate action in this court challenging the ACO's May 12, 2005 final decision, which held that ISN owed the government $280,241 for the contracts over which the ACO had authority.  This lawsuit was filed as case No. 06-387C, one of the consolidated actions here.  The government filed a counterclaim, seeking the payment of the $280,241.  *See* Answer & Counterclaim at 15, ECF No. 10.

Case No. 06-387C was stayed pending the resolution of case No. 06-99C.  *See* Apr. 23, 2008 Minute Order.  The stay was lifted when case No. 06-99C settled.  As noted above, in February 2011 (during discovery in case No. 06-387C) the government provided ISN with the indirect cost rate calculations it prepared in accordance with the settlement.  No. 13-988C Compl. ¶ 29.  According to ISN, these calculations contained errors, and as a result, ISN conducted its own indirect cost rate calculations, adding and reallocating costs, as part of its claim for damages in case No. 06-387C.  *Id.* ¶¶ 43-44.

Case No. 06-387C was eventually scheduled to go to trial in November 2012.  However, in motions in limine, the government argued that ISN's claims for revised indirect cost rate calculations had not been presented to the contracting officer and therefore the court lacked jurisdiction over the claims under the CDA.  *See* Mot. to Dismiss & Mot. in Limine, ECF No. 47.  The parties then stipulated to the dismissal

without prejudice of ISN's claims.  *See* Stipulations, ECF Nos. 62, 66.  The government's

counterclaim, however, was not dismissed and remains pending.  *See* July 30, 2015 Order

at 4, ECF No. 131.

Following the stipulated dismissal of ISN's claims in case No. 06-387C, on

January 31, 2013, ISN filed a CDA claim before the DCMA raising twelve issues

regarding seventeen contracts, including claimed adjustments to the final indirect cost

rates that had been prepared by the government under the settlement agreement in case

No. 06-99C.  The new DCMA ACO, after determining that she only had authority over

eleven of the seventeen contracts, issued a final decision denying the claims on May 20,

2013.[3]  *See* No. 13-988C Compl., Ex. B at 48-51.  The new ACO determined that for the

claims already decided by the prior ACO, including the indirect cost rate claims, "it

would be inappropriate for me to issue any final decision concerning them, and I do not

do so."  *Id.* at 49.

On December 13, 2013, ISN challenged the ACO's May 20, 2013 decision in this

court in case No. 13-988C, which was then consolidated with case No. 06-387C (the

government's counterclaim).  As relevant here, in Count I of the complaint in case No.

13-988C, ISN seeks a declaratory judgment that ISN properly calculated its final indirect

---

[3]  For the other six contracts, ISN delivered or attempted to deliver its claims to the
relevant contracting officers.  Some claims were denied, some did not receive a response,
and others were returned to ISN.  *See* No. 13-988C Compl. at 5-6.  The government has
sought partial summary judgment regarding ISN's claims under some of those contracts,
but the court does not address the government's arguments regarding those contracts in
this decision.

cost rates for FY 1982-2000. *Id.* at 19.  In addition to the costs agreed to in the No. 06-99C settlement agreement, ISN seeks add into the indirect cost rate calculation "claimed and incurred allowable costs per the FAR [(Federal Acquisition Regulations)] for 'Other Compensation.'"  No. 13-988C Compl. at 19-20.  ISN has also "utilized in its calculation a reversal [(re-allocation)] of [the] corporate allocations" originally set forth in the ACO's February 9, 2005 decision. *Id.* at 20.  ISN estimates that with these adjustments to the indirect rates the government owes ISN at least $3.7 million. *Id.* at 21.

In Count II of the complaint in case No. 13-988C, ISN seeks to recover money allegedly owed for unpaid invoices for direct labor and indirect costs, in the amount of $7 million.  In Count III, ISN seeks to recover offsets which ISN claims were mistakenly taken by the government together with other withheld amounts, in the amount of $475,000 plus interest.  *See* No. 13-988C Compl. at 21-22.  The calculations in Count II and Count III of ISN's complaint use ISN's revised final indirect cost rates.  *See id.* ¶ 58.

Now before the court are the parties' cross motions for partial summary judgment regarding certain issues arising under Counts I, II, and III of the No. 13-988C complaint. In its motion for partial summary judgment, the government seeks summary judgment on six issues.[4]  First, the government argues that ISN's claims relating to the determination

---

[4] The government acknowledges that even if its motion for partial summary judgment is granted in full, certain issues still remain under Counts I, II, and III.  *See* Def.'s Mot. at 2 n.1, ECF No. 282.  In particular, the government contends that the court must still decide (1) "what are the valid indirect rates based on the Government's counterclaim," (2) "the indirect rates for fiscal years (FY) 1983 and 1999-2000," (3) "the G&A rates for FYs 1985 and 1986," and (4) "the overhead and fringe rates for FYs 1996-1998."  *Id.*

of indirect cost rates for FY 1987-1995, arising under Count I of ISN's complaint, are barred by the settlement agreement in case No. 06-99C. Def.'s Mot. at 9-21, ECF No. 282. Second, the government argues that ISN's claims for costs and offsets arising under Counts II and III of ISN's complaint for two contracts – Contract No. DTFA01-85-Y-01018 and Contract No. MDA908-83-G-1504 – are barred by releases ISN signed in connection with those contracts. *Id.* at 21-25. Third, the government contends that ISN's Count II and III claims for Contract No. N66604-87-D-0098 are barred because ISN previously adjudicated those claims before the Armed Services Board of Contract Appeals (ASBCA) and must return to the ASBCA to resolve any remaining claims under that contract. *Id.* at 25-30. Fourth, the government argues that this court lacks jurisdiction over ISN's Count II and III claims for Contract No. 50SBNB5C3513 because ISN failed to establish that its claim was submitted to a contracting officer for a decision, a prerequisite to bringing suit in this court. *Id.* at 30-34. Fifth, the government asserts that ISN's Count II and III claims relating to NASA Contract Nos. NAS5-27486 and NASW-4164 are barred by laches. *Id.* at 34-43. Finally, the government argues that ISN entered into G&A rate agreements for FY 1996 and FY 1997-1998 that bar ISN's Count I claims for those fiscal years.[5] *Id.* at 43-50.

ISN has cross moved for partial summary judgment only on ISN's argument that its final indirect cost rate claims for FY 1987-1995 are not barred by the settlement

---

[5] ISN concedes that its claims for FY 1982 rates are barred by an indirect cost rate agreement. Pl.'s Cross-Mot. at 5, ECF No. 283 ("ISN does not dispute that the final indirect rate agreement for 1982 is binding . . . .").

agreement in case No. 06-99C.  Pl.'s Cross-Mot. at 6-19, ECF No. 283.  ISN opposes the

government's partial summary judgment motion, contending that the government has not

met its burden to show that summary disposition is warranted.  *Id.* at 19-50.

ISN has also filed a motion to strike five declarations submitted by the

government in support of its motion for partial summary judgment regarding service of

Contract No. 50SBNB5C3513 and the NASA contracts that the government argues are

barred by laches.  Pl.'s Mot. to Strike at 1-2, ECF No. 284.  ISN generally argues that the

declarations are improper because they contain opinions and conclusions not based on

personal knowledge.  *Id.*  The government opposes ISN's motion to strike, arguing that

each declaration is admissible.  Def.'s Resp. to Pl.'s Mot. to Strike at 1, ECF No. 289.

Lastly, the government has filed a motion to strike certain portions of ISN's reply

in support of its cross motion for partial summary judgment on the issue of whether the

settlement agreement in case No. 06-99C bars ISN's indirect cost rate claims for FY

1987-1995.  Def.'s Mot. to Strike at 1, ECF No. 293.  The government contends that ISN

makes new arguments based upon extrinsic evidence – including a declaration of ISN's

counsel and other new documents – to which the government has not had a chance to

respond.  *Id.* at 1-2.  Alternatively, the government requests to file a surreply.  *Id.* at 1.

ISN opposes this motion, arguing that the documents were added in direct response to the

government's arguments, and that the government has failed to demonstrate that it is

entitled to a surreply.  Pl.'s Resp. to Def.'s Mot. to Strike at 4-10, ECF No. 294.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see, e.g.*, *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987).  The moving party bears the burden of demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quotation omitted).  If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate by presenting evidence that a genuine dispute regarding a material fact exists.  *See, e.g.*, *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1354 (Fed. Cir. 2009).  "[O]nce a moving party satisfies its initial burden, mere allegations of a genuine issue of material fact without supporting evidence will not prevent entry of summary judgment." *Republic Sav. Bank, F.S.B. v. United States*, 584 F.3d 1369, 1374 (Fed. Cir. 2009).  "Contract interpretation is a question of law generally amenable to summary judgment." *Premier Office Complex of Parma, LLC v. United States*, 916 F.3d 1006, 1011 (Fed. Cir. 2019) (quotation omitted).

## III.   DISCUSSION

### A.   ISN's Claims Regarding its Indirect Cost Rates for FY 1987-1995 are Barred by the Settlement Agreement in Case No. 06-99C.

The parties each move for summary judgment regarding the effect of the No. 06-99C settlement agreement on ISN's indirect cost rate claims under Count I of the No. 13-988C complaint.  The government argues that ISN's indirect cost rate claims for FY

1987-1995 are barred under the doctrine of accord and satisfaction because, in the settlement agreement, ISN unambiguously released all claims for the calculation of indirect cost rates, known and unknown, for those years. Def.'s Mot. at 17-21. ISN contends that the unambiguous language of the settlement agreement and extrinsic evidence demonstrate that the settlement agreement left open the calculation of indirect cost rates and did not foreclose additional costs and reallocations not expressly addressed in case No. 06-99C. Pl.'s Cross-Mot. at 9-19; May 7, 2020 Tr. 25-26.

The court first discusses the legal standards governing the interpretation of settlement agreements and the accord and satisfaction doctrine. Applying these standards, the court concludes that ISN's claims are barred under the plain terms of the No. 06-99C settlement agreement.

### i.     Legal standards governing accord and satisfaction.

Accord and satisfaction refers to the "discharge [of a claim] by the rendering of some performance different from that which was claimed as due and the acceptance of such substituted performance by the claimant as full satisfaction of his claim." *Brock & Blevins Co. v. United States*, 343 F.2d 951, 955 (Ct. Cl. 1965) (quoting 6 Corbin, Contracts § 1276 (1962)); *see also Meridian Eng'g Co. v. United States*, 144 Fed. Cl. 667, 671 (2019). To establish the affirmative defense of accord and satisfaction, four elements must be present: "(1) proper subject matter; (2) competent parties; (3) a meeting of the minds of the parties; and (4) consideration." *Holland v. United States*, 621 F.3d 1366, 1382 (Fed. Cir. 2010) (quoting *O'Connor v. United States*, 308 F.3d 1233, 1240 (Fed. Cir. 2002)). A meeting of the minds occurs where there are "accompanying

12

expressions sufficient to make the [claimant] understand, or to make it unreasonable for

him not to understand, that the performance is offered to him as full satisfaction of his

claim and not otherwise." *Holland*, 621 F.3d at 1382 (quoting *Chesapeake & Potomac*

*Tel. Co. of Va. v. United States*, 654 F.2d 711, 716 (1981)); *see also Tamerlane, Ltd. v.*

*United States*, 81 Fed. Cl. 752, 764 (2008).

With regard to the No. 06-99C settlement agreement, no dispute exists that the

parties to the settlement agreement were competent to enter into the agreement and that

there was valid consideration exchanged between the parties.[6]  Rather, the parties'

dispute centers on whether the subject matter in Count I of the No. 13-988C complaint is

the same as that addressed by the No. 06-99C settlement agreement and, relatedly,

whether there was a meeting of the minds regarding the scope of the settlement

agreement, including the release.  Determining whether an accord and satisfaction has

occurred therefore requires the court to interpret the terms of the No. 06-99C settlement

agreement to establish what was resolved and released by ISN.

---

[6]  The court finds that the settlement agreement satisfies the "competent parties" and
"consideration" elements of the accord and satisfaction doctrine.  As the government
states, plaintiff's counsel signed the settlement agreement on behalf of ISN, and the
government's counsel of record at the time signed the settlement agreement on behalf of
the United States, as authorized by appropriate Department of Justice officials.  Def.'s
Mot. at 18.  There was also valid consideration between the parties.  As the government
states, ISN compromised its position by forgoing its claims in exchange for the additional
allowances listed in the settlement agreement.  *Id.* at 18-19.

### ii.      The legal standards governing contract interpretation.

Contract interpretation begins with the plain language of the agreement. *Langkamp v. United States*, 943 F.3d 1346, 1349 (Fed. Cir. 2019). The court "must interpret a contract as a whole and in a manner which gives reasonable meaning to all its parts and avoids conflict or surplusage of its provisions." *Gardiner, Kamya & Assocs., P.C. v. Jackson*, 467 F.3d 1348, 1353 (Fed. Cir. 2006) (internal corrections, quotation marks, and citation omitted). An "interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous." *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004). When the provisions of the contract are clear and unambiguous, "the court may not resort to extrinsic evidence to interpret it." *Premier Office*, 916 F.3d at 1011. "When the contractual language is unambiguous on its face, [the court's] inquiry ends and the plain language of the [a]greement controls." *Id.* (quotation omitted).

The court will consider extrinsic evidence if a contract is ambiguous, however, the parties' "differing interpretations of a contract provision does not, standing alone, create an ambiguity." *Mata v. United States*, 114 Fed. Cl. 736, 745 (2014). Rather, both interpretations must fall within a "zone of reasonableness." *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1999); *see also Premier Office*, 916 F.3d at 1011. Moreover, "[t]o the extent that the contract terms are ambiguous, requiring weighing of external evidence, the matter is not amenable to summary resolution." *Beta Sys., Inc. v. United States*, 838 F.2d 1179, 1183 (Fed. Cir. 1988).

The court's interpretation of the settlement agreement at issue here involves a release. "In interpreting the release, [the court must] first ascertain whether its language clearly bars the asserted claim." *Dureiko v. United States*, 209 F.3d 1345, 1356 (Fed. Cir. 2000). "[A]ny rights that the parties intended to reserve when executing a release must be expressly stated." *MW Builders, Inc. v. United States*, 134 Fed. Cl. 469, 512 (2017) (citing *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1373 (Fed. Cir. 1999)). Where release language is "unambiguous and susceptible only to one reasonable meaning, the court's review is limited to the plain meaning without considering extrinsic evidence." *MW Builders*, 134 Fed. Cl. at 512. "Exceptions to releases of claims are strictly construed against government contractors." *Gresham, Smith & Partners v. United States*, 24 Cl. Ct. 796, 801 (1991); *see also Dureiko*, 209 F.3d at 1356 (noting exceptions to releases are strictly construed against contractors).

### iii.    The terms of the No. 06-99C settlement agreement and ISN's current final indirect cost rate claims.

As discussed above, the parties' dispute regarding the No. 06-99C settlement agreement requires the court to determine, under the terms of the agreement, what claims were resolved and released by ISN. The court must then determine whether any of ISN's indirect cost rate claims now before the court were resolved and released under the settlement agreement.

The court starts with the plain language of the agreement. *Langkamp*, 943 F.3d at 1349. In the No. 06-99C settlement agreement, the parties stipulated that, on December 14, 2004, ISN presented to the DCMA ACO "a claim requesting the resolution of final

indirect cost rates." Def.'s App. 38.  The agreement further states that the ACO issued a

decision "disallowing certain claimed costs and setting forth his determination of indirect

cost rates." *Id.*  The parties stated that to settle the case, the government would include

additional allowances in its final indirect rate calculation.  *Id.* at 39.  The settlement

agreement states that "[t]he United States agrees that the allowances described in

paragraph 6 will be allocated to the appropriate indirect cost pools for purposes of

calculating final indirect cost rates, in addition to the allowances already allowed

pursuant to the contracting officer's February 9, 2005 final decision." *Id.*

ISN then agreed to stipulate to the dismissal of its complaint.  *Id.* at 40.  In the

release clause of the settlement agreement, ISN agrees to:

> release[], waive[], and abandon[] all claims, known or unknown, including all
> claims for monetary and declaratory relief, against the United States . . . arising
> out of, set forth, related to, or otherwise involved in Case No. 06-99C, including
> but not limited to, any claims for costs, expenses, attorney fees, and damages of
> any sort, with the exception of claims for payment resulting from the
> Government's calculation of final indirect cost rates that ISN might present to the
> agencies with which it contracted.

*Id.*  Further, in paragraph 14 of the settlement agreement, ISN:

> warrants and represents that no other action or suit with respect to the claims set
> forth in case No. 06-99C is pending or will be filed in or submitted to any other
> court, administrative agency, or legislative body, with the exception of claims for
> payment resulting from the Government's calculation of final indirect rates that
> ISN might present to the agencies with which in contracted.

*Id.* at 41.  The parties signed the settlement agreement on October 25, 2010, *id.* at 42-43,

and on November 1, 2010, the court dismissed ISN's complaint.

On January 31, 2013, however, ISN submitted a claim to the DCMA ACO stating

that, "[i]n addition to the additional allowable costs stipulated and agreed to in the [No.

06-99C] Settlement Agreement, ISN has added to the relevant cost pools additional claimed costs adjusted per the FAR for 'Other Compensation.'"  No. 13-988C Compl., Ex. A at 42.  ISN further stated that "[i]n addition, ISN utilized in its calculations a reversal of the corporate allocations originally set forth in the ACO's Final Decision of February [9], [2005] for years 198[7]-1995."  *Id.*  ISN sought the ACO's agreement that its final indirect rates were "accurate and properly reflect the Final Rates that should be utilized on ISN's final completion vouchers."  *Id.*  On May 20, 2013, the ACO denied this claim for FY 1987-1995 because the former ACO had previously decided the claim. *Id.*, Ex. B at 49.

On December 13, 2013, ISN filed in case No. 13-988C its eleven-count complaint, seeking, in Count I, declaratory judgment that its revised calculation of final indirect rates for FY 1982-2000 is just and proper.  Specifically, in Count I, ISN claims that it is entitled to add "Other Compensation" to the relevant cost pools and to reverse (re-allocate) corporate allocations "originally set forth in the ACO's Final Decision of February 9, 2005."[7]  No. 13-988C Compl. at 19-20.  In other words, ISN seeks to add costs to its indirect rate pools, re-allocate the costs among the indirect rates pools, and recalculate its final indirect cost rates for FY 1982-2000, including for the years previously addressed by the ACO's February 9, 2005 decision, which was challenged in case No. 06-99C.

---

[7] The government also contends that ISN added back other unallowable costs.  Def.'s Mot. at 17 (citing No. 13-988C Compl. ¶ 52).

### iv.     ISN released all claims relating to the determination of ISN's FY 1987-1995 final indirect cost rates under the plain terms of the No. 06-99C settlement agreement.

Upon consideration of the terms of the No. 06-99C settlement and the nature of ISN's claims here, the court agrees with the government that the claims in Count I – regarding what costs and allocations should be used to calculate final indirect cost rates for FY 1987-1995 – were resolved and released by ISN in case No. 06-99C.  The plain terms of the settlement agreement preclude ISN from making any claims for additional costs and re-allocations for purposes of calculating the final indirect cost rates for those years.  By signing the No. 06-99C settlement agreement, ISN broadly released all claims "known or unknown . . . arising out of, set forth, related to, or otherwise involved in Case No. 06-99C."  Def.'s App. 40.  The additional costs ISN now seeks, and the reversal of the corporate allocations, are certainly "related to" the claims involved in case No. 06-99C, which challenged the ACO's February 9, 2005 determination of ISN's indirect rates for FY 1987-1995.  ISN's claims regarding indirect cost rates for those years are thus unambiguously barred under the terms of the release.  *See Holland*, 621 F.3d at 1382-84; *Info. Sys. & Networks Corp. v. United States*, 68 Fed. Cl. 336, 346 (2005) (holding that claims were released under prior settlement agreement).

ISN's reading of the settlement agreement to the contrary is unreasonable.  ISN first argues that case No. 06-99C involved only the "specific cost disallowances" made by the ACO, that ISN made "no claim for final indirect rates," and that final rates were not resolved in the settlement agreement itself.  Pl.'s Cross-Mot. at 15-16.  It is true that the No. 06-99C settlement agreement did not expressly establish the final indirect rates

for FY 1987-1995.  However, the court agrees with the government that in case No. 06-99C, ISN challenged the ACO's disallowances of various costs and allocations in order to calculate ISN's final indirect rates, and the settlement agreement resolved what would be included in that calculation.  Def.'s Resp. at 6, 11.

This is evident from the plain terms of the agreement.  The parties agreed and stipulated that ISN's underlying CDA claim "request[ed] the resolution of final indirect cost rates," and that the ACO issued "final indirect cost rates."  Def.'s App. 38.  The United States agreed to include the costs outlined in the settlement agreement "for purposes of calculating final indirect cost rates" in addition to the costs already allowed under the ACO's final decision.  *Id.* at 39.  Giving meaning to all parts of the settlement agreement, the parties plainly resolved how the FY 1987-1995 final indirect cost rates would be calculated.  ISN's contention that the settlement agreement left open ISN's ability to later add new costs or to reallocate costs is unreasonable.

ISN also argued at oral argument that the exception to the settlement agreement's release clause, which mentions the "calculation" of final indirect cost rates, encompasses its indirect cost rate claims.  May 7, 2020 Tr. 26.  However, the plain language of the exception does not give ISN the right to challenge, once again, the costs and allocations agreed to by the parties in the settlement agreement.  Rather, the release exception states that ISN may make a claim for "payment" "resulting from the Government's calculation of final indirect cost rates."  Def.'s App. 40.  The court agrees with the government that this language permits ISN to submit "claims for payment" under ISN's contracts after the government calculates the final indirect rates in accordance with the settlement

agreement.  Def.'s Mot. at 20; Def.'s Resp. at 10.  This exception does not permit ISN to add or reallocate costs for purposes of calculating the final indirect rates.

The court also agrees with the government that ISN's two other arguments challenging the scope of the settlement agreement are without merit.  First, ISN argues that the February 9, 2005 ACO decision regarding final indirect rates was not explicitly incorporated into the agreement.  Pl.'s Cross-Mot. at 17-19; Pl.'s Reply at 19-22.  However, as the government argues, Def.'s Resp. at 13-15, the February 2005 ACO decision did not need to be expressly incorporated to explain the scope of the costs and allocations that were included in the settlement.  Paragraph 8 of the settlement agreement specifically identifies the February 2005 decision and explains that the government would calculate the final indirect cost rate using the allowances described in paragraph 6 of the settlement agreement and those "already allowed pursuant to the contracting officer's February 9, 2005 final decision."  Def.'s App. 39.  The settlement agreement's failure to use the term "incorporation" when referring to the ACO's February 2005 decision does not undermine the government's contention that the settlement agreement resolves all of the claims ISN brought or could have brought pertaining to the calculation of final indirect cost rates for FY 1987-1995.

Second, ISN's argument that the settlement agreement only covers "costs" and not the "allocation" of costs to indirect cost pools also lacks merit.  Pl.'s Cross-Mot. at 16-17.  This contention, as the government argues, Def.'s Resp. at 11-13, is undermined by ISN's amended complaint in No. 06-99C and the plain terms of the settlement agreement.  ISN expressly challenged the ACO's decision with respect to "Corporate and B&P

20

*Allocations*," which were used to determine its final indirect rates, in its No. 06-99C amended complaint.  Def.'s App. 32 (emphasis added).  Moreover, the settlement agreement expressly states that "[t]he United States agrees that the allowances described in paragraph 6 will be *allocated* to the appropriate indirect cost pools for purposes of calculating final indirect cost rates."  *Id.* at 39 (emphasis added).  The corporate allocations were directly addressed in case No. 06-99C and allocations were referenced in the settlement agreement.  Under the agreement's plain language, any challenges to allocations were also released.

For all of these reasons, the court holds that ISN's Count I claims for FY 1987-1995 are unambiguously barred pursuant to the plain terms of the No. 06-99C settlement agreement.

> **v.      The court does not consider the extrinsic evidence offered by ISN to interpret the settlement agreement and no subsequent government conduct precludes the accord and satisfaction defense.**

Because the court concludes that the plain language of the settlement agreement unambiguously bars ISN's Count I claims for FY 1987-1995, it is not necessary for the court to consider the extrinsic evidence presented by ISN in support of its interpretation of the settlement agreement.  *Jaynes v. United States*, 75 Fed. Cl. 218, 234 (2007) (holding that in the context of the accord and satisfaction defense, the court will not consider extrinsic evidence if the language of the agreement at issue is plain); *see also Holland*, 621 F.3d at 1382-83 (finding that the plain language of a settlement agreement was sufficient to show a meeting of the minds for accord and satisfaction); *Premier*

*Office*, 916 F.3d at 1011 (holding that where the terms of a contract are plain, the court will not look to extrinsic evidence to interpret the contract).

However, the court notes that courts may "refuse to bar a claim based upon the defense of accord and satisfaction where the parties continue to consider [a] claim after execution of a release" because this conduct is evidence that there was no meeting of the minds between the parties regarding the release. *England v. Sherman R. Smoot Corp.*, 388 F.3d 844, 849 (Fed. Cir. 2004) (quoting *Cmty. Heating & Plumbing Co., Inc. v. Kelso*, 987 F.2d 1575, 1581 (Fed. Cir. 1993)).  ISN argues in its filings that the government in this litigation has never before asserted that the settlement agreement prohibited ISN from making any claim about final indirect rates, suggesting that the parties did not intend to bar ISN's indirect cost rate claims.  Pl.'s Cross-Mot. at 10-11 (contending that the government's argument "contradicts the representations of defendant previously made to the Court"); Pl.'s Reply at 8-14 (arguing that throughout the "entire period of litigation leading up to the various pretrial proceedings,[] there was no mention by defendant that ISN had released its right to calculate and present final indirect rates").

ISN's reference to the government's litigation conduct, however, does not demonstrate that the government conceded that ISN could assert its indirect cost rate claims.  At most, the government acknowledged that ISN might have been able to challenge the indirect cost rates on the grounds that the rates were erroneously calculated under the terms of the settlement agreement, not that ISN could later add or reallocate indirect costs for purposes of establishing new final indirect cost rates.  *See* Pl.'s Reply at 13-14; Def.'s Reply to Mots. in Limine at 5, ECF No. 61.

Moreover, as ISN itself describes, the government consistently sought to bar ISN's revised indirect cost rate claims based on *res judicata* under case No. 06-99C and on other jurisdictional grounds.  *See* Pl.'s Reply at 8-14.  Indeed, some of the litigation documents ISN relies on demonstrate that the government did, in fact, consider ISN's indirect cost rate claims to be barred by the No. 06-99C settlement agreement.  *See* Aug. 13, 2012 Tr. 9, ECF No. 104 (government counsel stating that cost allowance issues were settled in Case No. 06-99C).  In short, ISN has not identified any evidence to establish that the government agreed that ISN was free to add and reallocate costs after ISN signed the settlement agreement, or that the government accepted those changes as valid.[8]

Based on the foregoing, the court grants the government's motion for summary judgment with regard to the indirect cost rates for FY 1987-1995, which were resolved by the settlement agreement in case No. 06-99C.  The court denies ISN's cross motion for summary judgment on this issue.

**B.    The Indirect Cost Rate Agreements for FY 1996-1998 Bar ISN's Claims Regarding G&A Rates for Those Years.**

The government has also moved for partial summary judgment regarding ISN's indirect cost rate claims for FY 1996-1998.  According to the government, ISN, through

---

[8]  Likewise, under the defense of release, there are "special and limited circumstances" under which a claim may be prosecuted, despite the execution of a release. *Mingus Constructors*, 812 F.2d at 1395.  These circumstances include mutual mistake, conduct of the parties acknowledging claims after a release, obvious mistake or oversight, and fraud or duress.  *Id.*  ISN does not present any evidence of mistake, fraud, or duress.  And as discussed above, the government did not acknowledge the validity of ISN's claims after the release.  As such, ISN is bound by the terms of the release.

its Chief Financial Officer Charles Bonuccelli, signed in 2002 binding G&A rate agreements for those years, and, therefore, ISN may not modify the G&A rates covered by those agreements.  Def.'s Mot. at 45-50.  ISN argues that Mr. Bonuccelli did not have authority to bind ISN to the rate agreements.  Pl.'s Cross-Mot. at 46-50.  The government responds that Mr. Bonuccelli had "apparent authority" to bind ISN, and that ISN's failure to timely disavow the rate agreements demonstrates that Mr. Bonuccelli had apparent authority to sign them and that ISN ratified the agreements.  Def.'s Mot. at 47-49.

Apparent authority is "the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."  *United States v. Great Am. Ins. Co.*, 738 F.3d 1320, 1334 (Fed. Cir. 2013) (quoting Restatement (Third) Of Agency § 1.03 (2006)).  "[S]ilence may constitute a manifestation when, in light of all the circumstances, a reasonable person would express dissent to the inference that other persons will draw from silence.  Failure then to express dissent will be taken as a manifestation of affirmance."  *Id.* (quoting Restatement (Third) Of Agency § 1.03 cmt. b).  "[S]ummary judgment on this issue is appropriate if, viewed in the light most favorable to the non-moving party, the facts establish that the principal acted in a manner that gave its agent the appearance of authority."  *Id.* at 1335.

The only dispute before the court regarding the validity of the FY 1996-1998 rate agreements is whether Mr. Bonuccelli had the authority to bind ISN.  The court concludes that the undisputed facts establish that Mr. Bonuccelli had apparent authority

to do so.  Mr. Bonuccelli was ISN's Chief Financial Officer and was responsible for the accounting and taxes for the company.  Def.'s App. 913-14.  In this role, Mr. Bonuccelli interfaced with DCAA to enter into auditor-determined rate agreements for FY 1996-1998.  *See id.*  Specifically, Mr. Bonuccelli submitted to the DCAA incurred cost submissions, which were certified by Ms. Malkani, president of ISN, proposing final G&A rates for FY 1996-1998.  *Id.* at 920, 996, 1041, 1064, 1091, 1131; *see* 48 C.F.R. § 42.705-2 (governing auditor-determined rates).  DCAA then sent the rate agreements accepting the proposed certified rates to Ms. Malkani.  The rate agreements were returned to DCAA signed by Mr. Bonuccelli.  *Id.* at 1039, 1177.  Mr. Bonuccelli had also signed other documents on behalf of ISN.  Def.'s Reply App. 1292.

Based on Mr. Bonuccelli's position at ISN and the fact that the agreed-upon rates were already certified by Ms. Malkani, it was reasonable for the government to assume that Mr. Bonuccelli had the authority to sign the rate agreements and bind ISN.  *See Am. Anchor & Chain Corp. v. United States*, 331 F.2d 860, 861 (Ct. Cl. 1964) (holding work manager had apparent authority to bind company to contracts without prior authorization from company's vice president by virtue of management position and failure of company to repudiate contracts); Restatement (Third) of Agency, § 1.03 cmt. b ("If the principal places a person in a position or office with specific functions or responsibilities, from which third parties will infer that the principal assents to acts by the person requisite to fulfilling the specific functions or responsibilities, the principal has manifested such assent to third parties.").  Mr. Bonuccelli's pattern of signing other documents on behalf of ISN further supports the government's reasonable belief that Mr. Bonuccelli was

authorized to sign the FY 1996-1998 rate agreements.  *See Great Am.*, 738 F.3d at 1335 (holding that "the pattern of agents exceeding their authority with no objection from [the company] would lead a reasonable person in the government's position to believe that such acts were authorized").

ISN's seventeen years of silence after the agreements were signed also affirms Mr. Bonuccelli's apparent authority to sign them.  *See Great Am.*, 738 F.3d at 1334 (noting that a principal's inaction creates apparent authority).  It was not until 2019 that ISN expressly contended that Mr. Bonuccelli did not have binding contract authority for ISN, in the context of this litigation.  Def.'s App. 849-50 (ISN's response to the defendant's first request for admissions).  In fact, ISN in other related cases – case No. 98-663C (regarding the inclusion of state income tax costs in indirect rates) and case No. 06-99C – represented that its rates for FYs 1996-1998 had been settled under the 2002 agreements. Def.'s App. 1213 (ISN's post-trial brief in case No. 98-663C stating "[ISN] settled its indirect rates with the defendant for  . . . 1996, 1997 and 1998"); Def.'s App. 31 (No. 06-99C amended complaint stating "final indirect rates have been agreed to for FY 1996, 1997, and 1998 pursuant to agreements dated September 3, 2002").  Moreover, in its now-dismissed amended complaint in case No. 06-387 – one of the consolidated actions *here* – ISN stated that its 1996 and 1997 rates had been settled.  No. 06-387C Am. Compl. ¶ 4, ECF No. 21.  Taken together, ISN's undisputed admissions and its failure to repudiate the 2002 rate agreements for nearly two decades demonstrate that the

government reasonably believed that Mr. Bonuccelli had the apparent authority to bind ISN to the rate agreements.[9]

ISN points to only two specific pieces of evidence to demonstrate that Mr. Bonuccelli did not have apparent authority to bind ISN.  However, neither creates a disputed issue sufficient to overcome summary judgment in the government's favor. First, ISN quotes a passage from the 2008 deposition of the DCMA ACO who issued the 2005 decisions challenged by ISN in case Nos. 06-99C and 06-387C.  In that deposition testimony, the ACO stated that he believed indirect rates negotiated between the ACO and Mr. Bonuccelli would have to be "ratified by [ISN's] president," Ms. Malkani. Def.'s Reply App. 1286.  ISN contends that this deposition testimony demonstrates that the government knew Mr. Bonuccelli did not have contracting authority for ISN.  Pl.'s Cross-Mot. at 46.

---

[9] Although the court has concluded that Mr. Bonuccelli had the apparent authority to bind ISN, the court also agrees with the government, Def.'s Resp. at 40, that it appears that ISN also ratified the rate agreements through its undisputed admissions and more than a decade of silence regarding the validity of the agreements.  *See id.* (citing cases); *see also Am. Anchor*, 331 F.2d at 864 (holding that contractor ratified agreements by not objecting for several months); Restatement (Third) of Agency § 4.01 cmt. f (2006) ("Delay in expressing an objection to an unauthorized act may result in ratification, depending on the length of time that elapses between the time the principal learns of the unauthorized act and the time the principal manifests an objection.").  ISN does not expressly argue that the elements of ratification have not been met.  *See* Pl.'s Cross-Mot. at 45-50.  ISN also does not dispute that at least a decade had passed before it challenged the FY 1996-1998 G&A rates or that it previously stated these rates had been settled by the prior agreements.  *See id.*  Rather, ISN makes the conclusory argument that it had no "duty to disavow" the agreements.  *Id.* at 48.  This statement is insufficient to overcome summary judgment on this issue.  *See Republic Sav. Bank*, 584 F.3d at 1374 (holding that mere allegations of a genuine issue of material fact without evidence is insufficient).

However, the government in response presents the ACO's 2019 deposition testimony, which demonstrates that the ACO in 2008 was referring to indirect rate *negotiations*, not the FY 1996-1998 indirect cost rate agreements, which were *not* negotiated. Def.'s Resp. at 38; Def.'s Reply App. 1290-95 (ACO's 2019 deposition testimony noting that he expected Ms. Malkani to approve *negotiated* rates, but that he assumed Mr. Bonuccelli "had the ability to bind the company"). This is confirmed by a closer reading of the ACO's 2008 deposition testimony, which states, in response to a line of questioning regarding "*negotiating* . . . various indirect rate issues," that the ACO understood that any agreements would have to be "ratified by the president." Def.'s Reply App. 1286 (emphasis added). In fact, the ACO specifically testified in 2008 that the 1996 rate agreement never "reached [his] level" because both parties agreed on the rates certified by Ms. Malkani. *Id.* In short, the 2008 ACO deposition testimony does not go to the question of whether Mr. Bonuccelli had the authority to sign the 2002 auditor-determined rate agreements, where ISN and the government agreed on ISN's rates. The 2008 deposition testimony provided by ISN thus does not create a disputed issue of material fact regarding the government's understanding of Mr. Bonuccelli's authority to sign those agreements.

Second, ISN argues that it disclaimed the 2002 final indirect rate agreements in 2012, when ISN submitted completion invoices for payment on its various contracts that used ISN's revised indirect rates. Pl.'s Cross-Mot. at 46-47. However, as the government discussed at oral argument, May 7, 2020 Tr. 32-33, the completion invoices did not expressly disavow Mr. Bonuccelli's authority.

Finally, ISN makes the argument that because the regulations governing the 2002 rate agreements state that "the agreement shall be signed by the *contractor* and the auditor," 48 C.F.R. § 42-705-2(b)(iii) (emphasis added), the government should have known that Mr. Bonuccelli had no authority to sign the rate agreements.  Pl.'s Cross-Mot. at 47.  However, ISN does not appear to dispute that the agreement could be signed by "anyone authorized by the contractor."  *Id.* at 48.  In addition, even if this regulation limited Mr. Bonuccelli's authority to sign the rate agreements, the Federal Circuit has held that the authority granted by a regulation is not dispositive on summary judgment of whether the government could reasonably believe that an agent, like Mr. Bonuccelli, had the authority to sign the agreement.  Rather, "[t]he central premise of apparent authority is that legally effective authority can in fact go beyond an expressly stated grant of actual authority."  *Great Am.*, 738 F.3d at 1334; *see also Am. Anchor*, 331 F.2d at 863-64 (holding that a manager had apparent authority to sign contracts even though the government's invitation for bids required evidence of an agent's authority).  The provisions of the FAR cited by ISN thus do not demonstrate that the government unreasonably relied on Mr. Bonuccelli's apparent authority to sign the rate agreements.

For these reasons, the court grants the government's motion for summary judgment with regard to the G&A rates for FY 1996-1998 covered by the 2002 rate agreements.

### C.    ISN's Motion to Strike is Deferred and the Government's Motion to Strike is Denied as Moot.

In light of the foregoing, the court defers ISN's motion to strike declarations relied on by the government in its motion for partial summary judgment for issues not addressed in this decision.  The government's motion to strike declarations addressing extrinsic evidence of the parties' intent regarding the No. 06-99C settlement agreement, or, in the alternative, to file a surreply is denied as moot.

## IV.    CONCLUSION

For the foregoing reasons, the government's motion for partial summary judgment is **GRANTED IN PART** and **DEFERRED IN PART**.  ISN's cross motion for partial summary judgment is **DENIED**.  ISN's motion to strike is **DEFERRED**, and the government's motion to strike is **DENIED AS MOOT**.

In addition, the parties are directed to file a joint status report regarding what indirect cost rate issues for FY 1982-2000 under Count I or the government's counterclaim remain for trial and a proposal for further proceedings on the indirect cost rate issues only by **June 9, 2020**.  The parties should discuss the issues identified by the government in its motion for partial summary judgment, *see* Def.'s Mot. at 2 n.1; *infra* n.4, and any other issues that remain regarding indirect cost rates.

The court intends to turn to ISN's remaining claims and the government's counterclaim and defenses once all final indirect cost rates are determined.  However, in the June 9, 2020 joint status report, the parties should also explain the effect of this opinion on the relief sought in Counts II and III of ISN's complaint and the government's

counterclaim, including each party's position regarding whether or not the government

owes ISN any money for each contract at issue. *See* Def.'s Mot. at 2 n.1. Thereafter, the

court will schedule a status conference to discuss next steps.

   **IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge
